JOHN D. FREWIN, Trustee, Appellee, *vs.* WILHELMINA J.
STARK *et al.* Appellants.

*Opinion filed October 28, 1925—Rehearing denied December 4, 1925.*

1. TRUSTS—*general rule as to when resulting trust arises—evidence.* Whenever one party furnishes the purchase money for a conveyance and the title is taken in the name of another a resulting trust arises from the original transaction at the instant the deed is taken, although the money is paid in small amounts at subsequent times; and the conditions necessary to create the trust may be proved by parol, provided the evidence is clear, satisfactory and beyond reasonable doubt.

2. SAME—*when wife cannot set up resulting trust to defeat husband's creditors.* Where a husband takes title to land purchased with his wife's money the law raises no presumption of a gift and a resulting trust is established without any agreement to that effect, but such trust may be defeated by proof of an understanding between the parties that no trust should result; and where the wife for more than twenty years allows the husband to treat the property as his own, without setting up any claim thereto because it was bought with her money, she cannot set up a resulting trust to defeat his creditors.

3. EVIDENCE—*when declarations tending to defeat a resulting trust are not admissible.* Declarations of a husband to the effect that he was owner of property which was purchased with his wife's money but title to which was taken in his name are not admissible

against the wife in an action by the husband's trustee in bankruptcy for the benefit of the husband's creditors, where the declarations were not made in her presence and there is no proof that she knew of or assented to them.

4. JUDGMENTS AND DECREES—*decree is presumed to be based on competent testimony.* A decree is presumed to be based on competent testimony, and if the competent testimony supports the decree it will be regarded as based on that evidence and not on the incompetent evidence.

APPEAL from the Circuit Court of Winnebago county; the Hon. EDWARD D. SHURTLEFF, Judge, presiding.

GARRETT, MAYNARD & FELL, for appellants.

HYER & GILL, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Complainant, John D. Frewin, trustee in bankruptcy of the estate of Victor Stark, filed his bill to set aside certain deeds to real estate and to subject it to the claims of creditors of the bankrupt. Stark was on the petition of creditors adjudged a bankrupt December 28, 1922, and complainant was subsequently appointed trustee. Before the bankruptcy proceeding was begun Stark owned the record title to part of a lot in Rockford which was improved with a building and was subject to certain incumbrances. December 9, 1922, he and his wife, Wilhelmina, joined in a deed conveying the property to their daughter, Agnes W. Boden, and on the same day the daughter and her husband, Hjalmar, conveyed the same property to Wilhelmina. The bill alleged the deeds were shams and were a fraud upon the creditors of Stark and prayed that they be set aside. Victor and Wilhelmina Stark, Agnes W. Boden and her husband, Hjalmar, were made defendants, and answered that the property was bought with the money of Wilhelmina, and the deed was improperly and without the knowledge and understanding of Wilhelmina originally made to Victor. Wilhelmina claims a resulting trust was created by op-

eration of law, that she became and was the equitable owner of the property, and that Victor held the naked legal title as trustee for her.

We deem it unnecessary to set out the evidence upon the question of whose money paid for the property. Some of the facts are, that the property was purchased of Isaac Lindstrom in January, 1901, for $2400. Charles Stark, a brother of Victor, was jointly interested in buying the property and the deed was made to him and Victor. A cash payment of $400 was made by the grantees, one-half of which was paid by Wilhelmina with money she had received from her father's estate and the other half was paid by Charles. The Stark brothers also gave a note for $500, due in three months, and the balance of the purchase price ($1500) was secured by mortgage on the property. Payments were made on the $500 note, and it was renewed from time to time until it was paid off by Wilhelmina and Charles. Wilhelmina kept roomers and boarders in the property and rented the lower story part of the time for $15 per month and part of the time for $25 per month and received the money for the roomers and boarders and from the rents. In March, 1905, Charles conveyed his interest in the property to Victor. Victor and wife mortgaged the property for $2000, paid off the $1500 mortgage and paid Charles $500. In 1910 the $2000 mortgage was paid with $1000 borrowed from the Swedish Building and Loan Association by mortgage on the property and $1000 cash. Victor from the time he came to this country worked in a furniture factory about ten years for one dollar per day. He then drove a wagon for a grocery store for $8 per week, then got a position as clerk in a grocery store at $10 per week, where he was employed ten years, and then started a grocery store for himself. It was not a profitable venture, and in 1922 he owed the Manufacturers National Bank about $1200. He was also indebted to the Cherry Valley Creamery Company about $500. His creditors were pressing

him to pay, and he and Wilhelmina on December 8, 1922, gave Oscar Peterson a note, secured by mortgage on the property, for $1000, to pay Victor's indebtedness. That mortgage, as we understand the testimony, was paid with $1000 Wilhelmina borrowed from Anderson, one of her boarders, on her note, signed also by her daughter. Wilhelmina testified lawyer Nelson told her the title was in her husband when she made the Peterson mortgage. The value of the property is approximately $4000, and it is encumbered by mortgage for $2000 and a homestead estate of $1000. According to the proof nothing was ever paid on the property by Victor, but all payments were made by Wilhelmina out of money she inherited and money she earned by her own labor. There is no proof that any of the earnings of Victor went into the property or the support of the family. According to the testimony he paid his wife board, the same as other boarders did, and she supplied all the food and kept up the house. Receipts for the payment of the taxes were issued in the name of Victor, but both he and Wilhelmina testified the payments were made with her money and mostly by her.

The property having been purchased with the money of appellant, Wilhelmina Stark, unless she authorized the deed to be made to her husband a trust resulted and he held the legal title as trustee for the wife's benefit as the equitable owner, and the existence of such a trust need not be evidenced by writing. In *Baughman* v. *Baughman,* 283 Ill. 55, the court quoted from *Bruce* v. *Roney,* 18 Ill. 67: "A resulting trust does not arise from or depend upon any agreement between the parties. Its very name implies that it is independent of any contract and is raised by the law itself upon a particular state of facts. It results from the fact that one man's money has been invested in land and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money paid by the trustee or the *cestui que trust.* This may be done by either

without the knowledge of the other. No matter how or by whom done, if the fact exists,—if it was done at all,—by mere operation of law a trust is raised in favor of the party whose money was used to purchase the land, either to the whole or his equivalent portion of the land." A resulting trust arises from the original transaction and at the instant the deed is taken. *Baughman* v. *Baughman, supra; Lord* v. *Reed,* 254 Ill. 350.

When a husband takes the title to land purchased with his wife's money the law raises no presumption of a gift to him, and in such case it is not necessary, in order to establish the trust, to prove it was the intention of the parties, at the time of the transaction, to create a trust. (*Wright* v. *Wright,* 242 Ill. 71; *Crawford* v. *Hurst,* 307 id. 243; *Lutyens* v. *Ahlrich,* 308 id. 11.) The conditions necessary to create a resulting trust may be proved by parol, but that must be proved by clear and satisfactory evidence, beyond reasonable doubt. (*Strong* v. *Messinger,* 148 Ill. 431; *Briscoe* v. *Price,* 275 id. 63; *Katzing* v. *Wiegand,* 286 id. 646.) While it is not essential to the creation of a resulting trust that the proof should show there was an agreement to that effect, it may be defeated by proof of an understanding between the parties that no trust should result. We are of opinion the facts necessary to the establishment of a trust were proved, unless it be that the proof showed the parties understood and intended that no trust should result from making the deed to Victor, if Wilhelmina knew and assented to the title being made to Victor for the purpose of assisting or benefiting him. The decree finds Victor is the owner of the property but does not find his money paid any part of the purchase price. We infer from a copy of the opinion delivered by the chancellor and printed in appellees' brief that the decree is based on the finding, from the testimony, that Wilhelmina, who paid the purchase money, knew the deed was made to her husband, saw tax receipts and insurance policies made out in his name, joined with

him in mortgaging the property to pay debts incurred in his grocery business, and not until she learned her husband was hopelessly involved did she set up any claim to the title by reason of the fact the property was bought with her money. The chancellor expressed a desire to protect Mrs. Stark, but also expressed the belief the law would not warrant him in doing so.

The Starks are Swedes and came to this country about thirty years ago. They have little education and very little knowledge of business matters, such as the sale and conveyance of real estate. That is specially true of Mrs. Stark, who was only able to express herself in English very imperfectly. There is only about $1000 in the property which the creditors can get, but it is a home for Mrs. Stark and produces some income. We are impressed, also, with a desire to protect Mrs. Stark, but before we could reverse the decree we would have to be able to say it was clearly and manifestly contrary to the weight of the evidence.

There is some obscurity in the testimony about Mrs. Stark being present when the deed was made by Lindstrom to her husband at the time the property was purchased, in 1901, but we think it fairly proves her presence. Victor testified the money was paid to Gus Godfrey, who apparently was attending to the transaction for Lindstrom; that he told Godfrey he did not want the deed made to him as he was putting no money in it, but Godfrey advised it was better to make the deed to him. Mrs. Stark and Charles Stark did not testify anything was said about to whom the deed should be made. If Victor is not mistaken it was agreed or consented to at the time that the deed was to be made to him instead of his wife. The testimony does not disclose that at the time Charles conveyed his interest anything was said as to whom the deed should be made. It was made to Victor, and the title of record was in him until December, 1922, when he and his wife made the deed to their daughter, Mrs. Boden. It is not pretended any

consideration was paid by Mrs. Boden or that any consideration was paid by her mother for the deed to her. The title was in Victor for more than twenty years, and the conclusion is warranted from the proof that Mrs. Stark knew it. Her money paid the taxes, and she had repairs made for which she became liable, and she collected all the rents. During the time the title was in Victor Mrs. Stark repeatedly joined with him in giving mortgages on the property, and in 1922 joined with him in mortgaging the property to pay a considerable sum of money he had become indebted for in the grocery business, in which he engaged in 1917. The Manufacturers National Bank, the Rockford Wholesale Grocery Company and the Forest City Wholesale Grocery Company were creditors of Victor, and he owed them in December, 1922, an aggregate of more than $3000. Representatives of those creditors testified, over objection, that Victor told them in 1922, when they were demanding settlement, that he owned the real estate; but that was after the indebtedness, or the greater part of it, had been incurred. Upon the ground that those declarations were not made in Mrs. Stark's presence and there is no proof that she knew of or assented to them that proof was inadmissible. (*Bennett* v. *Stout,* 98 Ill. 47.) In *Delfosse* v. *Delfosse,* 287 Ill. 251, the court refused to admit declarations of a grantor in a deed, not in the presence of his wife, affecting her title or interest. This court approved the ruling, and among other authorities cited *Bennett* v. *Stout, supra.*

Complaint is made that a financial statement dated in December, 1917, and signed by Victor Stark, was admitted in evidence. It contained the statement that Stark owned the real estate. It was secured by an agent of R. G. Dun & Co., for use by its Rockford agency in reporting to its customers the financial condition of business men who might ask credit. It was not identified by the agent who procured it from Stark and was produced by the manager of the Rockford agency of R. G. Dun & Co. The court ruled

it was admissible. Even if the court admitted some incompetent testimony, the decree is presumed to be based on competent testimony, and if the competent testimony heard supports the decree, the decree will be regarded as based on that evidence and that the court disregarded the incompetent evidence.

In *Smith* v. *Willard,* 174 Ill. 538, the wife's money was used to buy land and the deed was made to the husband. The grantor testified it was so made by direction of husband and wife. The wife testified she requested it be made to her. It was delivered at the house of the husband and wife in the presence of both. The husband became indebted, and seven years after the deed was made to him he conveyed the land to his wife. Shortly thereafter, and before the deed to the wife was recorded, a creditor of the husband obtained a judgment against him, levied upon and sold part of the land and received a sheriff's deed therefor. The wife filed a bill to set aside the sheriff's deed as a cloud upon her title. Upon a hearing the circuit court dismissed the bill for want of equity and this court affirmed the decree. The court said: "Where a married woman holds out to the world that her husband is the owner of property in which she has a resulting trust, or permits him to so act as to induce others to believe he is the owner of such property or has power to bind her, third persons acting reasonably on the strength of such belief, and giving credit to him thereupon, will be protected. * * * We do not deem it necessary to discuss the authorities cited by appellant tending to show that she held a resulting trust in this land by reason of having furnished the purchase money, and that her husband simply held the land as trustee for her. Had this been a bill filed by her to establish such resulting trust, and where the rights of third parties had not intervened or attached by reason of any omission or *laches* on her part, the evidence would clearly entitle her to a decree vesting in her the title to this land. The question is now presented,

however, whether, after the title to this land has remained in the husband for a period of seven years or more and by proper diligence appellant might have ascertained that fact, there was a duty imposed upon her to know that her directions as to the execution of the deed were carried out, before she will be permitted to maintain title as against one who has extended credit to the husband on the faith of his apparent title, and secured the lien." That case is not in conflict with *Phillips* v. *North*, 77 Ill. 243, and is supported by the great weight of authority.

Mrs. Stark allowed the title to remain in her husband more than twenty years, and we are unable to say the decree is palpably contrary to the weight of the competent testimony and contrary to law.

The decree is affirmed.

*Decree affirmed.*