GEORGE HENRY HALLANAN, APPELLANT, v. ANNIE HAMILTON ET AL., RESPONDENTS.

Submitted February 17, 1928—Decided May 14, 1928.

For the appellant, *Quinn, Parsons & Doremus* (*John J. Quinn* and *Theodore D. Parsons,* of counsel).

For the respondents, *Theodore J. Labrecque* and *James Inglis* (*Leon Roussille, Jr.,* of counsel).

For Annie Hamilton and George M. Hamilton, *Frank A. Sullivan.*

The opinion of the court was delivered by

KAYS, J. This is an appeal from a declaratory judgment rendered by the judge of the Monmouth County Circuit Court on a stipulation of facts and certain proofs presented to the court. From these stipulations and proofs it appears that in January 1905, one Annie Hallanan, a married woman, become the owner in fee of certain lands and premises situate in Monmouth county. Annie Hallanan retained possession of the said premises until January, 1917, when she executed and delivered a deed for the same to her husband, Michael Hallanan, without the intervention of an intermediary. In this conveyance no reference was made to the marital relations existing between the grantor and the grantee. The deed was executed and acknowledged by the said Annie Hallanan as if she had been a *feme sole.* The husband, Michael Hallanan, took possession of the premises and continued to hold it until his death occurred on April 3d, 1926. On or about June 22d, 1917, Annie Hallanan died intestate as to her real property leaving her surviving her husband, Michael Hallanan, and four children, to wit: The plaintiff, George Henry Halla-

nan, the defendant Annie Hamilton, wife of George M. Hamilton, Mary Brady, the wife of Edward Brady, Alice Koch, wife of Harry Koch. The said Michael Hallanan died testate, and in and by his last will and testament devised all his real estate, including the premises in question, to his executors and trustees to hold the same in trust during the lifetime of the plaintiff, George H. Hallanan, and his grandson, George H. Hallanan, Jr., upon a certain trust specified in the will, subject to the right of a daughter of the said Michael Hallanan to occupy the premises in question for a certain period. On or about October 29th, 1927, the plaintiff-appellant, George Henry Hallanan, purchased whatever right, title and interest two of his sisters, Mary Brady and husband and Alice Koch and husband, had in the premises, which he claims made him the owner of an undivided three-fourths interest therein because of the fact, he alleges, the deed made by his mother, Annie Hallanan, to his father, Michael Hallanan, was void for the reason it was made directly from his mother to his father instead through an intermediary. Plaintiff claims that said deed was void under the common law rule of unity of the marital relation and also under section 14 of the Married Women's act (3 *Comp. Stat.*, *p.* 3237), and that the legal title remained in his mother at the time of her death. He further urges that as she died intestate, the legal title descended to him and to his sisters as next of kin and heirs-at-law, and that his father, Michael Hallanan, notwithstanding the deed, acquired merely an estate by curtesy, with the result that he had no estate in the premises to dispose of by his will. It is claimed by the defendants, Annie Hallanan, George Reynolds Gibbons and George Henry Hallanan, who are the executors and trustees under the will of the said Michael Hallanan, that the deed made by the said Annie Hallanan to Michael Hallanan was validated by chapter 146 (*Pamph. L.* 1927, *p.* 283), and that in case said law did not validate said deed then that the deed itself vested in Michael Hallanan an equitable title to the land in question, and that the trustees are entitled to enforce that equity in a proceeding against the holders of the bare title, and would be entitled to a decree to that effect of the

Court of Chancery, directing such a conveyance to be made by the holders of the legal title.

The Monmouth County Circuit Court judge held that chapter 49 (*Pamph. L.* 1919, *p.* 95), entitled "An act providing that a husband or wife may convey real estate directly to each other," and the amendment thereto being chapter 146 (*Pamph. L.* 1927, *p.* 283), had no application to the present controversy, for the reason that the deed in question was made by Mrs. Hallanan in 1917, and that she died the same year, and the rights of her heirs-at-law consequently accrued and became vested prior to the enactment of said act in 1919 and the amendment of 1927, which acts did not apply to conveyances of land directly from husband to wife or wife to husband prior to the former date. The judge held, however, that the plaintiff was the owner of the bare legal title to three-fourths of the land in question subject to compulsory surrender thereof to the owners of the equitable estate in fee by appropriate procedure in equity.

We are of the opinion that the learned Circuit Court judge was right in his conclusion that the deed made by Annie Hallanan to Michael Hallanan conveyed an estate which would be good in equity and that equity would take cognizance and enforce it, compelling the surrender of the legal title to the equitable owners who in this case were executors and trustees under the will. We do not agree, however, with the learned judge that the act of 1919 and the amendment of 1927 above referred to are not applicable to this case. The amendment of 1927 (*Pamph. L.* 1927, *p.* 283) by the second section provided, "Every deed of such conveyance heretofore made or hereafter to be made in pursuance of this act shall be valid and effective in law and in equity, and is hereby validated and made effective accordingly," &c. It quite obviously appears that this statute was intended to meet exactly the circumstances and facts which exist in this case before us. It is suggested by the plaintiff that the effect of this statute would be to take away property from the parties without due process of law. We do not consider this to be the case. The statute deals with a situation, as was pointed out by the trial judge, where the grantee or those claiming under him had a

valid equitable title to the land, and which is enforceable as against the parties holding the bare legal title by appropriate procedure in equity. The act above referred to of 1919, as amended by *Pamph. L.* 1927, *p.* 283, avoids the necessity of resorting to such procedure in a court of equity, and vests a present right to the legal title of the land in the equitable owners without the formality of a suit in Chancery. In this respect the case in question is similar to the case of *Hannan* v. *Wilson,* 100 *N. J. Eq.* 528. In this case Chief Justice Gummere, writing the opinion of this court, said, in reference to the act of *Pamph. L.* 1924, *p.* 347, which provided for the validating of a deed wherein the recital thereof the name of one of the parties had been omitted:

"It is suggested by counsel that this statutory provision is unconstitutional, so far as it is applicable to cases like that now under consideration, because it deprives a married woman of property which never has been legally conveyed to her. But this suggestion is based upon a misapprehension of the effect of the statute. A deed by a married woman, in the execution of which her husband joins, vests in the grantee an equitable estate in the land which is the subject of the conveyance. *Wright* v. *Pell,* 90 *N. J. Eq.* 11. The purpose of the statute is not to divest her of property without compensation paid therefor, but solely to give that effect to conveyance made, executed and delivered in good faith by her, and for which she has received the consideration money, which the parties to the instrument intended that it should have; and this the statute does by declaring that the omission by the scrivener of the name of the husband in the body of the deed shall not defeat the purpose of the parties to the instrument, but that such a conveyance shall transfer the legal, as well as the equitable, title to the land embraced in it. The power of the legislature to enact statutes for this purpose cannot, we think, be successfully challenged. That it has been frequently exercised a cursory examination of our statute law will disclose. At almost every session of that body statutes are passed, the object of which is to validate conveyances made and accepted in good faith, but which are defective in their execution by reason of the fact that the

acknowledgments thereto are nullities because the terms of the officers by whom they are taken have expired prior to the date of such taking, and, so far as we are aware, it has never even been suggested that such legislative action violates any constitutional provision."

It appears from the facts in this case that Michael Hallanan took possession of the premises after the deed had been delivered to him and continued to remain in possession and exercised the rights of ownership until his death. A conveyance by a wife to a husband is a presumed gift, and there is nothing in this case which tends to controvert such a conclusion. *Schultze* v. *Schultze,* 73 *N. J. Eq.* 597, and *Farmer* v. *Farmer,* 39 *Id.* 211.

We are therefore of the opinion that Michael Hallanan was the owner of an equitable estate in fee in the lands and premises in question at the time of his death and had the right of disposing of it by will, and that by reason of the said act of 1919, as amended by *Pamph. L.* 1927, *p.* 283, the legal title also vested in him. It is not necessary, therefore, to take action in Chancery to recover the legal title for the benefit of the equitable estate. In this respect the judgment below will be modified.

KALISCH, J. (dissenting). These are cross appeals. Both plaintiff and defendants appeal from a provisional determination by the trial judge, sitting in the Monmouth County Circuit Court, without a jury.

The procedure adopted in this case is without precedent. It is alleged to be under the Declaratory Judgment act. Assuming that this be so, it is clear to me that there are three fundamental reasons why the appeals should be dismissed.

(1) The Circuit Court had no jurisdiction, since it appears from the facts agreed upon that the matters involved in the litigation are of a nature which requires a separate determination in a court of law so far as the legal title is concerned, and in a court of equity, so far as the equitable rights of some of the litigants are concerned, under the will. Under our constitution the power and jurisdiction of our

courts of law are to be exercised separately and distinctly from the power and jurisdiction exercised by our courts of equity.

By article 4, section 7, placitum 10 of the constitution, it is declared: "The legislature may vest in the Circuit Courts, or Common Pleas within the several counties of this state, chancery powers so far as relates to the foreclosure of mortgages and sale of mortgaged premises."

If there is anything in the Declaratory Judgment act which exceeds the grant of power and jurisdiction so conferred, then in that respect the offending provision of the statute must be treated as nullity.

(2) There is no formal judgment.

Under caption "Judgment" it reads: "Plaintiff is declared to be the owner of the bare legal title to an undivided three-fourths part of the lands and premises in question, subject to compulsory surrender thereof to the owners of the equitable estate in fee by appropriate procedure in equity."

·This, surely, is not a final determination tantamount to a final judgment. It clearly contemplates further proceedings in a court of equity. Our constitution declares: "Final judgments in any Circuit Court may be brought by writ of error into the Supreme Court, or directly into the Court of Errors and Appeals."

Of course, this constitutional declaration excludes an appeal from a determination had in a court of law unless it was in all respects a final· determination so as to be tantamount to a final judgment. *Eames* v. *Stiles,* 31 *N. J. L.* 490; *Defiance Fruit Co.* v. *Fox,* ·76 *Id.* 482; *McAdams* v. *Mundy,* 79 *Id.* 480; *Knight* v. *Cape May Sand Co.,* 83 *Id.* 597.

Since the pronounceemnt of the trial judge is in the nature of an advisory opinion, and manifestly not determinative of the controversy between the litigants, it lacks the very essence of a final judgment, such as is contemplated by the plain language of the constitution, and as expressed and defined by the unequivocal decisions of this court in the cases above cited, and, therefore, no appeal lies.

Moreover, the language in which the alleged judgment is couched expressly forbids any notion of its finality, but on the contrary, most significantly recognizes that the issues involved in the proceedings are not finally determined and are open for further consideration and judicial action by the Court of Chancery.

Furthermore, it is palpable to the legal mind that such a *quasi* determination could not be successfully pleaded in bar to an action where the issues between the same parties and their privies have been finally determined. It is familiar law that the plea of *res judicata* can only be properly pleaded where the issues between the parties have been finally determined and settled by a former adjudication.

In the instant case, that so-called "judgment," speaking for itself, plainly declares that no finality of the rights of the litigants can be reached until a court of equity has had an opportunity to settle and determine the equitable rights of the parties, under the issues raised by the pleadings.

In the case *sub judice*, according to the record and briefs of counsel, both parties are dissatisfied with the result reached by the trial judge, who sat as judge and jury.

While it is true, under the new Practice act of 1912, a notice of appeal has been substituted for the common law writ of error, nevertheless, the function of the latter was not altered thereby, but inheres in all respects in a notice of appeal.

The object sought for by a writ of error, at common law, was to reverse a judgment for errors in law apparent in the record, or exhibited by a bill of exceptions, and the same object is now attained under the new Practice act by a notice of appeal, with this difference—that no formal bill of exception is necessary, it being sufficient to note an objection made on the record to the ruling of the court.

A most extensive search among the reported cases, at common law, fails to reveal any case where both the successful and the unsuccessful party took writs of error to reverse a judgment.

(3)) Where both parties were dissatisfied with the result of the verdict, if the verdict was for the plaintiff, it was the practice, as exemplified by the reported cases in the English

and American reports, for both the successful plaintiff and the unsuccessful defendant to apply to the trial court for a rule to show cause why the verdict should not be set aside and a new trial ordered.

Of course, such applications invariably rested upon diametrically opposite grounds. This is illustrated by a situation where the plaintiff's application is based upon the ground that the damages awarded are indequate, or upon some other substantial ground of law or fact; whereas the defendant's application may be based upon the ground that under the law there ought not to have been any verdict against him, or that the verdict was against the weight of the evidence, or that the damages awarded were excessive, &c.

No such practice was countenanced where a writ of error was the medium of an appeal to a higher court. In such a situation, the court is only properly concerned with errors in law, apparent in the record, or committed by the trial judge in the course of the trial, and in the disposition of the cause, as exhibited by bills of exception, and upon which errors have been duly assigned by assignments of errors, and if no error be found, the appellate court affirms the judgment *in toto,* and if error be found, prejudicial to the party appealing, the appellate court reverses the judgment *in toto.*

In this respect the common law practice has not been altered by statute. In view of article 10, placitum 1 of the constitution which declares, "The common law and statute law now in force, but not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature," it becomes obvious that the common law in regard to appeals remains in full force and effect, except that bills of exceptions are abrogated and assignments of errors have been succeeded, under the new Practice act, by grounds of appeal, and except as altered in criminal cases.

Now, there can be no question that a successful plaintiff could, at common law, appeal by writ of error, from a judgment in his favor, on errors in the record, or for trial errors committed by the trial court, and such appeal would be followed by assignments of error, in which the defendant might

join issue, or if he was desirous of a new trial, confess error in the record, upon which fact appearing, the judgment would be reversed.

A different method of procedure obtains in cases on appeal from a decree or order of the Court of Chancery, for in that class of cases, this court is clothed with the power to review and decide questions of law and of fact, and, hence, may affirm or modify or reverse a decree or order of the Court of Chancery, or in a proper case, direct the nature of the decree to be entered.

Of course, I am fully aware that I have been dealing with familiar legal principles governing our practice, under the old and new Practice acts, which principles should be known to all practitioners, but I have reason to believe that by the very circumstances of the general familiarity of these principles, and as is often the fate of familiar principles, they have been either overlooked or forgotten.

Keeping in view what has been said regarding the broad powers of this court in the review of, and dealing with, orders and decrees of the Court of Chancery, and the narrow and limited power of this court to be exercised by it in the review of a judgment at law, namely, to review solely errors in law, it is startling to be confronted with the declaration by a majority of this court that the judgment delivered by the trial judge was a final judgment of law, and though it be erroneous in part, this court could modify it, and affirm the judgment as modified.

There was power in the trial court, at common law, to enter a judgment on a verdict of a jury *non obstante veredicto,* which, as is well known to the bench and bar, is a verdict directed by the trial judge in favor of the plaintiff, without regard to the verdict obtained by the defendant. 1 *Bouv. Dict.* 760.

This judicial action was limited, in its exercise, to the trial court, in which the case was tried. If the case were tried in the Supreme Court Circuit, the judicial power referred to would be exercised on a rule to show cause why a verdict should not be set aside and the rule made absolute. See *Hoyt* v.

*Kearny Land Co., 7 N. J. L. J.* 121; *Hoyt* v. *Newbold,* 45 *N. J. L.* 219 (at *p.* 224), in which case the rule was made absolute and a verdict entered for the defendant, but no such practice existed where the case was on appeal by writ of error, to a higher tribunal.

It is true, that in *Meyer* v. *Krauter,* 56 *N. J. L.* 696, Mr. Justice Garrison, speaking for this court (at *p.* 698), in concluding his opinion, said: "The request that a verdict be directed for the defendant was a proper one, and judgment is ordered accordingly;" but this declaration ·cannot be accepted as authority that such practice ever existed in this state, for no such practice was pointed out, nor was ever such practice followed.

Moreover, the matter was never called to the attention of the court, and seems to have been passed over in silence.

It is proper to note here that the final result and vote, as recorded in the case, at the time of the deliverance of the opinion, is incorrect and was corrected in 57 *N. J. L.* 712.

The Court of Errors and Appeals is not vested, by the constitution, with the power to direct the entry of a verdict different from the verdict rendered by the jury, or by a court, sitting as a jury, or amend or alter a judgment different from what the record shows it to be.

The court has the power to remit the record to the trial judge to be dealt with according to law and fact.

Article 10, paragraph 1 of the constitution expressly declares: "The several courts of law and equity, except as herein otherwise provided, shall continue with the like power and jurisdiction as if this constitution had not been adopted." This declaration can only mean that this court shall continue to exercise the like power and jurisdiction as were exercised by it before the adoption of the constitution of 1844.

What this jurisdiction and power were at common law had to be sought for in the judicial history of the appellate courts of England (after which our appellate courts have been fashioned), and in the statutes and the decisions of our courts prior to the adoption of our constitution.

There is no warrant in law for this court to amend a judgment at law, contrary to the fact found by the verdict

of a jury or by the trial judge, sitting as court and jury. There has been no such practice nor can there be any constitutional legislation to that end.

Under the constitution the only power this court could properly exercise, in the instant case, as has already been stated, was to either affirm or reverse the judgment *in toto*.

For the reasons stated, I vote to dismiss the appeal.

The Chancellor and Justice Katzenbach authorize me to state that they concur in the views expressed in this opinion.

*For reversal*—THE CHANCELLOR, PARKER, KALISCH, KATZENBACH, JJ. 4.

*For modification*—THE CHIEF JUSTICE, TRENCHARD, MINTURN, BLACK, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ. 12.