Argued February 2; affirmed February 28, 1933

RHODES ET AL. *v.* PEERY ET AL.

(19 P. (2d) 418)

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, and James E. Burdett, of McMinnville, on the brief), for appellants.

*Oscar Hayter,* of Dallas (Carleton E. Sox, of Albany, on the brief), for respondents.

BELT, J.  This is a suit to determine the title to two parcels of land which are a part of a donation land claim in Yamhill county, granted by the government to Alvis Kimsey and his wife, Elizabeth Kimsey, in 1866. The 161 acre tract involved is a part of the west half of the land claim owned by Alvis Kimsey. The other tract of 93.22 acres is in the east half of the claim and is a part of the original grant to Elizabeth Kimsey.

In the statement of the case our attention will first be directed to the west half of the claim. Alvis Kimsey died intestate in August, 1856 and left surviving him, as his sole heirs at law, his widow, three daughters named Melissa Ann, Mary Jane, and

Rachel, and one son named Wiley. Melissa Ann, his daughter by a former marriage, married John W. Gaines and, on March 9, 1871, she and her husband conveyed by deed her undivided one-fourth interest in the land which she inherited from her father, to H. W. Peery and his wife (nee Mary Jane Kimsey). Rachel Kimsey married Milton Peery in 1868. On July 28, 1875, she conveyed her undivided one-third interest in land in Polk county, which she had acquired prior to her marriage, in exchange for the one-fourth interest which her brother Wiley had inherited from her father. The deed from Wiley Kimsey was made to Milton S. Peery, as sole grantee.

Plaintiffs allege that Milton S. Peery alone was named in this conveyance from Wiley A. Kimsey, without the knowledge or consent of his wife Rachel and with the understanding ''on the part of said Rachel E. Peery that it was to be made to her''. Plaintiffs aver in substance that, although the deed is absolute on its face, since Rachel E. Peery furnished the entire consideration for the conveyance from Wiley, a resulting trust exists in favor of the wife. Defendants, who are the children of Milton S. Peery by a second wife, deny that their father held this title in trust for his then wife Rachel and assert that the deed is what it purports to be. If it be assumed that a resulting trust was created in favor of Rachel Peery, she would, as a result of having acquired the one-fourth interest of her brother, be the owner in fee of a one-half interest in the west half of the claim, the other half being owned by H. W. Peery and his wife. If Milton S. Peery did not hold title in trust for the beneficial use of his wife, then it follows that he and she at one time each owned an undivided one-fourth interest in the west half of the donation land claim.

It is alleged that on January 20, 1887, Milton S. Peery and his wife and H. W. Peery and his wife entered into an agreement to partition the west half of the donation land claim and that, pursuant to such agreement, H. W. Peery and his wife conveyed by deed on the above date to "M. S. Peery and R. E. Peery, his wife" their interest in the north half of the west half of the claim, being the 161 acres in controversy. Defendants assert that this conveyance created an estate by entirety and that, since Milton S. Peery survived Rachel, his wife, the entire title in fee became vested in him. The plaintiffs, however, contend that, when the west half of the claim was partitioned, Milton S. Peery had only an estate by curtesy in the half interest which his wife Rachel owned and that, under the law, no greater or additional title could be acquired by reason of a partition deed.

Rachel E. Peery died intestate February 9, 1899, leaving, as her heirs, her widower, Milton S. Peery; her daughter, Maude L. Rhodes; her granddaughters, Beulah Williams Cooper, Hilda Lung Brosnahan, and Viola Pearl Lung, the plaintiffs herein. Milton S. Peery remarried. He died testate September 23, 1928, leaving, as his heirs, his widow, Hattie E. Peery; the daughter and granddaughters above named, under former marriage; and two daughters, Mildred A. Smith and Helen I. Peery born under his second marriage. Under the terms of the will of Milton S. Peery, a life estate was devised to his widow, and upon her death title became vested in equal shares in the children of both marriages.

Relative to the title to the tract in controversy in the west half of the claim, it will be seen from the above statement of facts that whether Milton S. Peery,

at the time of his death, had the right thus to devise such property depends upon the answer to the following questions: (1) Was a resulting trust created in favor of his wife Rachel, notwithstanding the conveyance from Wiley Kimsey to him alone? (2) Was an estate by entirety created by virtue of the deed executed by H. W. Peery and his wife in January, 1887?

The following statement of the case pertains to the tract in the east half of the claim. Elizabeth Kimsey, in 1867, married Willis Gaines. She died intestate in September, 1888 and left, surviving her, as her heirs at law, her widower—who died soon after her decease— and the following children: (1) James J. Dorris, a son by virtue of a marriage prior to her marriage with Alvis Kimsey; (2) Mary Jane Kimsey (who married H. W. Peery); (3) Rachel E. Kimsey (who married Milton S. Peery); (4) Wiley A. Kimsey; (5) Martha A. South (daughter of Elizabeth and Willis Gaines).

In following the chain of title, we find a conveyance on August 28, 1889, from James J. Dorris and his wife to Wiley A. Kimsey, transferring his undivided one-fifth interest in the east half of the claim. On October 29, 1889, Wiley A. Kimsey and wife deeded his two-fifths interest in the land in question to "M. S. Peery and R. E. Peery jointly as tenants in common". On December 4, 1889, Mary Jane Peery and her husband conveyed an undivided one-fifth interest in the east half of the claim to D. L. Curl. On the same date, John A. South and wife, Martha A., also conveyed an undivided one-fifth interest in the east half of the claim to D. L. Curl. It is alleged that, pursuant to a partition agreement, D. L. Curl and his wife, on April 22, 1890, conveyed by quit claim deed to "M. S. Peery and R. E. Peery" all of their interest

in the 193.22 acres of land in the east half of the claim. On the same date, in consideration of the last mentioned deed and in accordance with the partition agreement, Peery and his wife conveyed to D. L. Curl a strip of land 15.35 chains wide across the east side of the donation land claim. During the same year, Peery and his wife deeded 100 acres of the land to A. M. Peery, leaving in the grantors 93.22 acres, or the land in question.

Plaintiffs allege that, when Wiley A. Kimsey and his wife conveyed their undivided two-fifths interest to M. S. Peery and wife, the wife furnished the entire consideration for the purchase of such interest and that, by reason thereof, an implied trust arose in her favor. It is further alleged that the husband "caused his name to be placed in said deed" as one of the grantees, without the wife's knowledge or consent and contrary to the agreement that the deed should be so written as to make her the sole grantee. The defendants deny any intention on the part of the wife to create a trust, or that she furnished the entire consideration, and rely upon the legal effect of the deed itself. Defendants also assert that, since Rachel Peery pre-deceased her husband, the title, by virtue of the deed from Curl and his wife to "M. S. Peery and R. E. Peery", became vested in M. S. Peery. In answer to the contention that such deed created an estate by entirety, plaintiffs assert that, even though no implied trust was created, Rachel acquired a one-fifth interest in the land by inheritance from her mother and that, when the land was partitioned, the husband could obtain no greater or additional title than he held as tenant in common, or an undivided two-fifths interest. Plaintiffs further aver that, if a resulting

trust has been established, the husband had only a right of curtesy in the land and that title became vested in Rachel to the entire three-fifths interest.

The trial court decreed that the plaintiffs were owners in fee and as tenants in common of the 161 acres in the west half of the claim; that each of the plaintiffs Maude L. Rhodes and Beulah Williams Cooper was seized of an estate of inheritance of an undivided one-third interest in the fee; and that the plaintiffs Hilda Lung Brosnahan and Viola Pearl Lung were each the owner of an undivided one-sixth part of the fee.

Relative to the land in the east half, the court found that no implied trust had been established as a result of the conveyance from Wiley Kimsey and wife of their two-fifths interest, since the evidence concerning payment by the wife of the purchase price was not clear and convincing. The court gave legal effect to the deed wherein the grantees were designated as tenants in common. Hence the trial court concluded that Rachel acquired a one-fifth interest in the east half of the claim by inheritance and a one-fifth interest therein by virtue of the deed from Kimsey. It was decreed that the plaintiffs were the owners in fee as tenants in common and entitled to the possession of an undivided two-thirds interest in the 93.22 acres of land involved in the east half of the claim; that each of the plaintiffs Maude L. Rhodes and Beulah Williams Cooper are seized of an estate of inheritance to the extent of an undivided one-third part or interest in said undivided two-thirds interest in said land or an undivided two-ninths interest therein; and that each of the plaintiffs Hilda Lung Brosnahan and Viola Pearl Lung are seized of an estate of inheritance to

the extent of an undivided one-sixth part or interest in said undivided two-thirds interest in the fee of said land, or an undivided one-ninth interest therein.

From such decree the defendants appeal.

In considering the title to the land involved in the west half of the donation land claim, we will first direct attention to the interests of Milton Peery and his wife Rachel in such land prior to the time when it was partitioned in 1887. Rachel had inherited an undivided one-fourth interest therein from her father. Did Milton Peery hold the undivided one-fourth interest which Wiley Kimsey conveyed to him in 1875 in trust for the beneficial use of his wife? If this question be answered in the affirmative, it follows that, when the land was partitioned, she had an undivided one-half interest therein. If no trust was created, she would still have an undivided one-fourth interest through inheritance from her father.

■■ The general rule is well established that, where property is paid for with the money of one person and the title thereto is taken in the name of another, an implied trust arises by operation of law in favor of the one who furnished the purchase price, unless there is evidence showing a contrary intention. A resulting trust is established not by virtue of any contract or agreement. It is based upon the natural presumption that he who furnishes the purchase price intends that the property bought shall inure to his own benefit and not to that of another, and that the conveyance is taken in the name of another for some incidental reason. So far as resulting trusts are concerned—as distinguished from constructive trusts—it is immaterial that the conveyance is taken in the name of another with the knowledge and consent of the one who supplies the consideration.

■ It is established by clear and convincing evidence that Rachel Peery furnished the entire consideration for the conveyance from her brother Wiley A. Kimsey. The land which she and her husband conveyed in exchange for the undivided one-fourth interest of her brother was acquired by her before her marriage, as shown by deed introduced in evidence. The deeds in exchange were executed on the same day and were acknowledged before the same officer. Both deeds contain the same recital as to consideration. Furthermore, there is the uncontradicted testimony of Wiley A. Kimsey that "not a cent" was paid in exchange for the deed executed in favor of Milton S. Peery. We need not therefore be concerned with those cases wherein courts of equity have refused to declare a resulting trust on the ground that doubt existed as to who made payment of the purchase price. Here, there is no doubt about who furnished the consideration for exchange of property.

■ While not entirely in accord, it is established by the great weight of authority that, where the purchase price is furnished by the wife and title to the property taken in the name of the husband, a resulting trust is presumed in favor of the wife: *Frewin v. Stark,* 319 Ill. 35 (149 N. E. 588); *Lutyens v. Ahlrich,* 308 Ill. 11 (139 N. E. 50); *Wallace v. Mize,* 153 Ga. 374 (112 S. E. 724); *Keaton v. Pipkins,* 43 Fed. (2d) 497; *Rhea v. Thompson,* 115 Cal. App. 466 (1 P. (2d) 1091); *Wise v. Raynor,* 200 N. C. 567 (157 S. E. 853); *Thomas v. Standiford,* 49 Md. 181; Thompson on Real Property § 2299; Perry on Trusts (7th Ed.) § 144; 39 Cyc. 138. See cases cited in exhaustive notes found in Am. & Eng. Ann. Cas, 1915D, 625, and 127 Am. St. Rep. 256.

174

The United States Supreme Court thus states the rule in *Stickney v. Stickney,* 131 U. S. 227 (9 S. Ct. 677, 33 L. Ed. 136):

"We think that whenever a husband acquires possession of the separate property of his wife, whether with or without her consent, he must be deemed to hold it in trust for her benefit, in the absence of any direct evidence that she intended to make a gift of it to him".

■ A different rule obtains where the money is furnished by the husband and title to the property taken in the name of the wife. Under such circumstances, in the absence of evidence indicating a contrary intention, a gift or advancement to the wife is presumed. This distinction is observed in *Lutyens v. Ahlrich,* supra, wherein the court said:

"It is the rule that, where a man pays for property and causes it to be conveyed to his wife or child, the presumption is that it was intended as a gift or an advancement; the chief reason therefor being that there is a legal obligation resting upon the father to support such wife or child. However that rule is not applicable, and no such presumption exists, where the wife furnishes the purchase money and the deed is taken in the name of the husband". Citing Wright v. Wright, 242 Ill. 71 (89 N. E. 789, 26 L. R. A. (N. S.) 161).

In the opinion of the writer, confusion has arisen by reason of the failure of some courts to take cognizance of the distinction above stated.

In some jurisdictions, a conveyance by a wife to husband is presumed to be a gift, even though she supplies the entire consideration for the deed: *Hallanan v. Hamilton,* 104 N. J. Law 632 (142 Atl. 27, 346); *Schellinger v. Selover* (N. J.), 46 Atl. 1058; *Hummel v. Marshall,* 95 W. Va. 42 (120 S. E. 164); *White v.*

*Amenta,* 110 Conn. 314 (148 Atl. 345), citing: *Wilson v. Warner,* 89 Conn. 243 (93 Atl. 533) (a case wherein title to the property was taken in the name of the wife) and Perry on Trusts (7th Ed.) § 143, wherein the author undoubtedly had in mind the rule where property is taken in the name of the wife, as evidenced by the following quotation from such text:

"A purchase by a wife in the name of her husband raises no presumption of a gift to him * * * as the natural presumption would usually be that she intended he should act as her agent in acquiring the property and a trust would result if he took title in his own name". § 144 Perry on Trusts (7th Ed.).

Appellants also cite *Bibb v. Smith,* 59 Tenn. 728, decided in 1874, but the later case of *Walker v. Walker* (1925), 2 Tenn. App. 279, explains the earlier one and indicates that the present day decisions in that jurisdiction support plaintiff's theory of a resulting trust.

We think the rule relative to the establishment of a resulting trust for which plaintiffs contend has been recognized by this court in *Linnville v. Smith,* 6 Or. 202; *Springer v. Young,* 14 Or. 280 (12 P. 400), and *Lane v. Myers,* 70 Or. 376 (141 P. 1022), although the facts are somewhat different from those in the case under consideration. In the case last cited, the court said:

"It is well settled that where one using the money of another purchases real property, taking title in his own name instead of that of the owner of the money, without consent of the latter, a trust is raised in favor of the one owning the money, so that, while the bare legal title is in the grantee named in the conveyance, yet the equitable estate is in the one who furnished the money. This doctrine was established as between husband and wife in the early case of Springer v. Young, 14 Or. 280 (12 Pac. 400)".

There is language in *Parker v. Newitt,* 18 Or. 274 (23 P. 246), which gives some comfort to appellants, but when read in the light of the question before the court, it is not inconsistent with the rule here announced. In the Parker case, the title to the land was taken in the name of the wife, for whom the husband was bound legally and morally to provide, and, therefore, as the court said, "* * * the presumption is that it was intended as an advancement and not a resulting trust; * * *".

■ We are not unmindful that, in the instant case, the allegations of plaintiffs' complaint, relative to an implied trust, were far stronger than the proof. However, the precise question is presented as to whether the mere payment by a wife of the purchase price, where title to the land is taken in the name of the husband, is, in itself, sufficient to create the presumption of a resulting trust. We answer in the affirmative. The legal effect of such presumption would be to establish prima facie a resulting trust. In the instant case there is no evidence contrary to such presumption.

■ Since a resulting trust in favor of Rachel Peery was prima facie established, it follows that, at the time the partition deeds were exchanged, she had an undivided one-half interest in the west half of the claim and that her husband had only a curtesy estate therein.

■ We next inquire: Did Milton Peery, by virtue of the partition deed executed by H. W. Peery and his wife, acquire a greater interest in such land? The deed, on its face, purports to convey an estate by the entirety. However, when we take into consideration the purpose for which the deed was made and the intention of the parties, it is clear under the authorities that Milton Peery acquired no new or additional title

in the land by reason of such conveyance. The legal effect of the partition deeds was to sever the unity of possession which the heirs of Alvis Kimsey had in the land. After the partition was accomplished, each heir had precisely the same title which he originally had. As stated in 47 C. J. 282:

"* * * If a deed of an allotment of a wife's share is to the husband and wife, the deed confers no additional title on the husband, and he has no interest in the land so alloted except such marital rights as the law vests in him. This is so, although the conveyance was made at the wife's request, because, being a married woman, she is presumed to have acted under the coercion of her husband. Such a deed does not create an estate by the entirety; and the husband does not take the estate by right of survivorship on the wife's death".

To the same effect, see Thompson on Real Property § 1744. Also see 20 R. C. L. 781, wherein it is said:

"* * * The legal effect of a partition deed from the other tenants in common to their cotenant and his or her spouse is not to create an estate by the entirety, but merely to designate the share of the tenant, so that it may thereafter be held in severalty".

■ The law thus announced applies with equal force to the partition deed covering the land in controversy in the east half of the claim. Before the partition deeds were executed, Rachel Peery had an undivided two-fifths interest in the east half of the claim and her husband, as a tenant in common, had an undivided one-fifth interest therein, which he acquired by reason of the conveyance from Wiley A. Kimsey. The deed from D. L. Curl and his wife to Milton S. Peery and wife did not, in view of the object and purpose of its execution, create an estate by the entirety.

■ It remains to be determined whether the suit of the plaintiffs is subject to the defense of laches and

the Statute of Limitations. There is no merit in the contention that Milton S. Peery, upon whose interest defendants base their claim of title, had acquired title by adverse possession. He was in possession of the land under and by virtue of his right of curtesy, and at no time, so far as the record discloses, did he assert any claim of title hostile to the interests of Rachel E. Peery. As stated in Thompson on Real Property, § 800:

"But possession by a tenant by curtesy is insufficient to enable him to acquire the fee by adverse possession, the possession of a life tenant not being adverse to the remainderman".

Neither do we think the defense of laches is tenable. The present suit was instituted about six months after the death of Milton S. Peery. We are not concerned with the cases wherein the rights of third parties have intervened. No element of estoppel is involved. Rachel and her husband lived together in peace and harmony and it was not incumbent upon her to institute a suit for the purpose of declaring a trust against one in whom she, no doubt, had implicit confidence. As stated in *Oliver v. Piatt,* 44 U. S. 333 (11 L. Ed. 622):

"The mere lapse of time constitutes of itself no bar to the enforcement of a subsisting trust; and time begins to run against a trust only from the time when it is openly disavowed by the trustee, who insists upon an adverse right and interest, which is fully and unequivocally made known to the cestui que trust".

Also see *Fawcett v. Fawcett,* 85 Wis. 332 (55 N. W. 405, 39 Am. St. Rep. 844).

The decree of the lower court is affirmed. Neither party will recover costs and disbursements.

RAND, C. J., ROSSMAN and KELLY, JJ., concur.