Argued September 13; reversed October 11, 1949

# PAPE ET AL. *v.* TITLE AND TRUST COMPANY, A CORP. and GEORGE NEUNER, ATTORNEY GENERAL OF THE STATE OF OREGON

210 P. 2d 490

*John C. Veatch,* of Portland, argued the cause for appellants. On the brief were Veatch and Bradshaw, of Portland.

*James K. Buell,* of Portland, argued the cause for respondents. With him on the brief were Griffith, Peck, Phillips & Nelson, of Portland, George Neuner, Attorney General, and Rex Kimmel, Deputy Attorney General, of Salem.

Before BRAND, Acting Chief Justice, ROSSMAN, BAILEY, HAY and PAGE, Justices.

ROSSMAN, J.

This is an appeal by the plaintiffs from a decree of the Circuit Court in favor of the defendants, which was entered after demurrers, filed by each of the two defendants, had been sustained to the complaint, and the plaintiffs had declined to plead further. The plaintiffs are the heirs at law of Mary Frances Lawrence, who died August 25, 1927. The part of her estate which is mentioned in the residuary clause of her will is the subject matter of the suit out of which the appeal arose. The defendants are the Honorable George Neuner, Attorney General of this State, and the Title and Trust Company, which is in possession of the residue of the estate. Its right to continued possession is dependent upon the validity of the part of the residuary clause of the deceased's will which undertakes to establish a trust "for homeless, self-supporting women." The demurrers, identical in their phraseology, were based upon the grounds that "the suit has not been commenced within the time limited by law" and "the complaint does not state facts sufficient to constitute a cause of suit." The Attorney General was made a party on account of the State's interest in charities.

The will of the deceased bequeathed the residue of her estate in trust to defendant Title and Trust Company with instructions (1) to pay one-fourth of the net income earned by the residue to each of four annuitants named in the will during his lifetime; (2) upon the death of an annuitant to divide his share among the remaining annuitants; and (3) upon the death of the last annuitant to comply with the following: "I will and direct that the principal of said trust fund be applied by said trustee in the purchase of a site and the erection and equipment of a building for homeless, self-

supporting women to be situated in the City of Portland, Oregon, and to be known as the Mary Frances Lawrence Home.'' The plaintiffs challenge the validity of the provision just quoted.

The prayer of the complaint seeks a decree for an accounting, the determination of attorney's fees, the computation of the amount of inheritance taxes payable by the plaintiffs and the award to each plaintiff of his part of the residue.

The will was executed July 13, 1925. The testatrix died August 25, 1927, and the last annuitant died in September, 1945. This suit was filed December 22, 1947.

It will be observed that the will of the decedent sought to bequeath the residue of her estate to the defendant-trustee in perpetuity. The plaintiffs argue that since the will provided that the Mary Frances Lawrence Home, which the trustee was directed to establish with the residue, was to serve the needs of ''self-supporting women,'' it could not be a public charity. They also contend that the rules against rendering property inalienable in perpetuity, except in such instances as, for example, a public charity, render the devise invalid if the prospective home is deemed a private charity.

The residuary clause, if valid, created two trusts, both to be discharged by the defendant-trustee, one following the other. The first trust had as its beneficiaries the four annuitants, all of whom are now dead. At the termination of that trust the second one, if valid, went into effect. If the bequest concerning the contemplated Mary Frances Lawrence Home is void, a resulting trust in favor of the plaintiffs arose, and, in that event, the defendant-trustee must account to the heirs of the decedent for the property it possesses: Scott on Trusts, § 411, and Bogert, Trusts and Trustees, § 468.

It will be recalled that one of the two grounds upon which the demurrer was predicated was: "The suit has not been commenced within the time limited by the law." A cestui of a resulting trust who does not take seasonable action may find himself barred by laches or the statute of limitations: *Rhodes v. Peery*, 142 Or. 165, 19 P. 2d 418; Bogert, Trusts and Trustees, § 466, and Scott on Trusts, §§ 409 and 481, point 1.

The plaintiffs claim that the statute of limitations did not begin to run until they became entitled to the property which the defendant-trustee now holds; that is, upon the death of the last annuitant. This suit was filed about two years after the last annuitant died. The defendants say that the limitation period is ten years.

"A cause of suit accrued to plaintiffs," according to the defendants' contentions, "to have their future interest in the estate of Mary Frances Lawrence determined on October 24, 1929, the date of the order of distribution entered in the probate of her estate." This suit was not filed until eighteen years after the order was made. The defendants claim that the trustee, upon entry of the order of distribution, assumed possession of the property which constituted the residue and thereafter held it subject to the rights of the annuitants for the benefit of the people of this state—the beneficiaries of all public charities. The purported action of the trustee, so the defendants argue, constituted a repudiation of any interest which the plaintiffs may have had in the property and, therefore, the limitation period began when the order of distribution was made.

■ Restatement of the Law, Trusts, § 409, says:

"The beneficiary of a resulting trust is not barred merely by lapse of time from enforcing the resulting trust, but if the trustees of a resulting

trust repudiates the trust to the knowledge of the beneficiary, the beneficiary may be barred by laches from enforcing the resulting trust.''

The decisions out of which the principle just quoted was distilled are cited and discussed in Scott on Trusts, § 409, and Bogert, Trusts and Trustees, § 952. We have examined many of them and believe that the rule stated by the Restatement is correct. We also think that the decisions of this court employed the principle which the Restatement adopted: *Rhodes v. Peery,* supra, and *Raymond v. Flavel,* 27 Or. 219, 40 P. 158.

■ The complaint shows that upon entry of the order of distribution the defendant-trustee took into its possession the residue of the estate. It shows nothing more than that. At the time just mentioned the duties of the defendant-trustee required it to distribute the income earned by the corpus of the trust to the four annuitants. Until the death of the last of the annuitants it had no duty to perform in regard to the residence to be built in the future for ''homeless, self-supporting women.'' The trust for the self-supporting women, if valid, began with the settlor's death, but its subject matter would not come into possession of the trustee (as trustee for the prospective Home) until the death of all the annuitants. Since the trustee and the beneficiaries of the purported trust were in existence at the time of the settlor's death, the trust provision did not violate the rule against remoteness. See Bogert, Trusts and Trustees, §§ 213 and 214. But, as we have just indicated, the trustee was not entitled to possession of the property bequeathed for the alleged charity until the death of the last annuitant. Until the expiration of the life estate, the property was held in trust for the annuitants. We do not believe that the acceptance of

the residue of the estate in 1929 by the defendant-trustee constituted, upon its part, any action concerning the provision for the Home or concerning the alleged resulting trust. Had the plaintiffs, upon the day the order of distribution was entered, sought to maintain this suit they would have been unable to prove an act of repudiation.

■ In endeavoring to show that a remedy was available to the plaintiffs following the entry of the order of distribution, the defendants cite § 213, Restatement of the Law, Property, which follows:

> "When conduct of a third person amounts to the assertion of a claim inconsistent with the right of the owner of a future interest to the future possession or enjoyment of the thing, and satisfies the requirements stated in § 211, then the owner of such future interest is entitled to obtain a decree declaring such right."

Paragraph d of the Comment which follows the quoted language says:

> "The statutory procedure resulting in a declaratory judgment is an available procedural device in many states for the effectuation of the rule stated in this Section."

It is apparent that the remedy suggested by § 213 is tantamount to a suit for a declaratory judgment. Our statute upon the subject, being the Uniform Declaratory Judgments Act, is § 6-601 to and including § 6-616, O. C. L. A. Evidently § 213 of the Restatement deems that a justiciable controversy arises "when conduct of a third person amounts to the assertion of a claim inconsistent with the right of the owner of a future interest." In the present instance, the third person is the defendant-trustee. As we have seen, the defendant-

trustee, following the entry of the order of distribution, did nothing which could have been deemed the inception of a justiciable controversy.

■ In view of our analysis of the conduct of the defendant-trustee which followed the entry of the order of distribution, we do not think that the limitation period began to run when the order was made. We think that the limitation period did not begin to run against the plaintiffs and in favor of the trustee until the death of the last annuitant: *Raymond v. Flavel*, 27 Or. 219, 40 P. 158.

■■ To avoid being misunderstood, we shall pursue the matter a little further. From 53 C. J. S., Limitations of Actions, § 7, p. 926, we quote:

"As a general rule, where there are two remedies for the enforcement of a right, the fact that one of them is barred by limitations does not bar the other."

Therefore, even if the conditions demanded by § 213, Restatement of the Law, Property, as the basis for declaratory relief had been existent, and if the remedy afforded by that section had been barred, those circumstances would not have precluded the plaintiffs from maintaining the suit now before us.

■ We find no merit in the contention advanced by the defendants that the plaintiffs' cause was barred by laches or the statute of limitations.

The defendants claim that the order of the probate court, which determined the amount of inheritance taxes for which the bequests made by the will of the decedent were liable, found that the bequest for the Home established a public charity and, therefore, assessed no tax upon it. They depend upon that order as res judicata that the bequest is for a public charity.

Section 20-135, O. C. L. A., says:

"The report of the appraisers shall be filed with the county court and from such report, and other proof relating to any such estate before the county court, the court shall forthwith, as of course, determine the full and true value of all such estates and the amount of the tax to which the same are liable; or the county court may so determine the full and true value of all such estates, and the amount of tax to which the same are liable, without appointing appraisers, as herein provided."

Section 20-136, O. C. L. A., (amended by Oregon Laws 1947, Ch. 441 § 7, after the inheritance taxes had been assessed) required the court, after taking the course exacted by § 20-135, to give notice of its determination to all interested parties, including the State Treasurer. Section 20-137, O. C. L. A., (amended by Oregon Laws 1947, Ch. 441, § 8, after the taxes had been assessed) made provision whereby the State Treasurer and other persons affected by a tax imposed by the court upon an inheritance could obtain a judicial determination of it. The process began by filing with the court objections to the tax and praying for reassessment and redetermination. When objections had been filed, the court was required to appoint a time for a hearing and give notice to interested parties. Upon the appointed hour, the court, so § 20-137 said,

"shall proceed to hear any such objection and evidence which may be offered in support thereof or opposition thereto; and if after such hearing, the said court finds the amount at which the property is appraised is its market value, and the appraisement was made fairly and in good faith, it shall approve such appraisement; but if it finds that the appraisement was made at a greater or less sum than the market value of the property, or that * * * ."

██ It is clear that when a probate court exercises the powers conferred by § 20-135, O. C. L. A., the parties are not entitled, as a matter of right, to a hearing. The court, in determining the value of the estate and fixing the amount of the tax, acts in a ministerial as distinguished from a judicial capacity: *Union County v. Hyde,* 26 Or. 24, 37 P. 76. Orders entered in proceedings which afford no opportunity for a hearing are not acceptable by the doctrine of res judicata: Freeman on Judgments, 5th Ed., § 666.

In *Hume v. Turner,* 42 Or. 202, 70 P. 611, the would-be appellant had received by the decree which he wished to attack all the relief which was available to him, although the court, in awarding the relief, gave an erroneous reason for its action. This court, in dismissing the appeal, said:

"It is a statutory rule that a litigant can only appeal from an order affecting a substantial right (Hills' Ann. Laws, 535), which accords with the fundamental principle everywhere recognized, that he has no appeal unless aggrieved by the judgment or decree of the trial court."

██ The order upon which the defendants depend imposed, according to them, no tax whatever upon the assets bequeathed by the part of the residuary clause which is now under attack. That being so, the plaintiffs were not aggrieved by it or adversely affected. An appeal from that order could not have been beneficial to them. We assume that if no tax was imposed, the reason for the omission was a belief that the bequest was given for the establishment of a public charity; but the reason, erroneous though it may have been, afforded no basis for an appeal. The probate court did nothing concerning the alleged resulting trust upon

which the plaintiffs rely, and assessed no tax upon any interest in the residue claimed by any of the plaintiffs. Clearly, none of the plaintiffs was aggrieved by the course taken by the probate court. Since the plaintiffs were accorded no hearing before the entry of the order upon which the defendants depend, and were unable to appeal from it and thereby obtain a hearing, the order can not be deemed res judicata of the controversy.

■ We come now to the basic issue: Does the bequest quoted in a preceding paragraph establish a public charity. The bequest constitutes the thirteenth paragraph of the testatrix's will and directs the trustee, after purchasing a site, to erect upon it "a nice, comfortable home for homeless, self-supporting women." It will be observed that the home, if the bequest is valid, is to serve "self-supporting women." Self-supporting people are not generally the objects of charity, although the fact that those affected by a bequest of bounty are not in necessitous circumstances does not always demonstrate that the bounty was not given for charitable purposes. The challenged provision of the will selects as its restricting adjectives not only "self-supporting", but also "homeless". It is reasonable to infer from the will that the textatrix at one time experienced the anguish of heart of those who are homeless and long for the companionship which blesses the family hearth. The third paragraph of her will bequeathed $100 each to two friends who showed her "kindness" when she "was homeless and needed a friend." The tenth paragraph, after bequeathing $20,000 to one of her sisters, said: "This is a thank gift, because when I was no longer able to care for myself she offered to let me have a home with her."

The seventh paragraph of the will bequeathed $1,000 to the Moody Bible Institute, of Chicago, after the death

of Anna Lawrence, a sister of the testatrix. The defendants argue that the four bequests just mentioned disclose a general charitable intent. There is nothing in the complaint which indicates that the three relatives to whom bequests were given were in need of charity, and the Moody Bible Institute is not an institution which common parlance terms a charity.

The will does not require the trustee, after constructing the Home, to conduct in it any activity for the promotion of the general welfare of the community or to carry on any work bearing a semblance to that performed by public charities. It goes no further than to direct the trustee to erect and equip the Home. Although the will indicates that the testatrix was interested in women who are able to support themselves, it contains no intimation of her attitude toward others.

From the fact that the testatrix, although a wealthy woman, had felt the pangs that come from loneliness, it is permissible to reason that the real quest of the attacked provision was companionship for others who are lonely and homeless. In making the bequest, she may have been prompted by her own experiences and it may be that she had in mind her own situation. Although she had more money than the average person possesses and had numerous relatives, she, seemingly, had experienced a void in her life which nothing she possessed was able to fill. Very likely companionship and the warmth of a fireside had been the mecca of her dreams. It seems reasonable to assume that she was not interested in a home as a medium for administering charity, but as a means of providing amity and companionship for those who dwell in it. When a sizeable number of self-supporting women, who otherwise would be homeless, are collected together under one

roof she expected that they would gain happiness by the simple process of living together. Living together not infrequently yields friendship, companionship and acts of mutual kindness. It enables the group to be helpful to each of its members. The testatrix thought, so we infer, that by bringing together self-supporting women "in a nice, comfortable home" they would gain more happiness than they could achieve by living in separate structures scattered about the city. Their common interests, that is, of being without families and of pursuing gainful occupations, would stimulate each, she thought, to contribute something in the way of happiness to the others. The purpose of the testatrix in directing that the Home should be built was to provide the hearth; she depended upon the occupants who would gather about it to create the amity which would dispel loneliness.

The will provides no endowment for the Home. That is a strong indication that it was not intended to administer charity. The will provides that the Home should be operated for "self-supporting women." That is, of course, a direction to the trustee, if the will is valid, to admit none who were not self-supporting. Thus, there is nothing in the challenged document which shows a charitable purpose, but rather we have the direct opposite. If we have correctly discerned the testatrix's thoughts, and we believe that we have, she would not have wished to have thrown into the group which were to be the occupants of the Home some who were in need of charity, for the presence of necessitous persons in the Home would give to the Mary Frances Lawrence Home a cast or repute which would render it uninviting to the very ones whom she wished to welcome. It is a matter of common observation that

however much the self-supporting may help the un-fortunate, they generally do not wish to live in the same quarters with the recipients of their bounty. In fact, some self-supporting people find it necessary to shun living quarters which have a semblance of being charities.

Without more analysis, we express our conclusion that the will discloses a kindly or benevolent purpose, but not one to create a public charity. If we are mis-taken, and we do not think that we are, the fault lies in an omission on the part of the testatrix to have ex-pressed a charitable purpose. The interest which she manifested in human beings was confined to those who are self-supporting.

In our above construction of the contested clause, we have construed the words which the testatrix actually wrote. We have no right to add something which she omitted, either directly by adding a few words of our own or obliquely by the process of construction. Section 2-216, O. C. L. A., says:

"In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, * * *."

It is true that charities are the favorites of the law, but a public charity enjoys privileges such as freedom from taxation and freedom from liability for tort which should not be accorded to institutions which do not minister to the social interests of the community.

We do not think that the provision for the Mary Frances Lawrence Home set up a public charity. That being our conclusion, there is no necessity for dis-cussing the cy-pres doctrine. The defendants do not

seek to sustain the bequest as one for a private charity, and concede that any effort to do so would run afoul of the rule against perpetuities.

In reaching the above decision, we have not cited or discussed all of the authorities submitted by the defendants, but all of them received careful consideration.

The decree of the Circuit Court is in error and is reversed. The demurrers should not have been sustained; they should have been overruled. The cause is remanded.