(No. 20572.—)
PETE KEDAS, Appellant, *vs.* ALEX KEDAS, Appellee.

*Opinion filed February 18, 1931.*

A. B. DENNIS, for appellant.

ACTON, ACTON & BALDWIN, (WILLIAM M. ACTON, of counsel,) for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

This is an appeal by Pete Kedas from a decree of the circuit court of Vermilion county dismissing for want of equity his bill of complaint against Alex Kedas, by which he sought to have a resulting trust established in two pieces of real estate, the partition thereof and an accounting for rents and profits therefrom.

On March 7, 1918, a contract was entered into in the name of appellant for the purchase of 61½ acres of land known as the Blakeney farm for $3000, of which $50 was paid upon the execution of the contract. On May 13, 1918, the balance of the purchase price was paid by mortgaging the Blakeney land and the house in which Barbara and Anton Kedas, the parents of appellant and appellee, resided,

and some other real estate owned by them, and paying the balance in cash. The title was taken in the name of Barbara Kedas. Appellant entered the navy in July of 1918, where he remained until the latter part of 1919. While he was in the navy a contract for the purchase of the other tract here in question, called the Powers land, was entered into. This contract was not in evidence. Title to this land was taken in the name of Barbara Kedas in June, 1925. Barbara and Anton Kedas were the parents of eight children, all of whom lived together as one family on about an acre of land in the coal mining neighborhood of Westville, in Vermilion county. Appellant and appellee started to work in the mine when they were about ten years of age and turned their wages over to their mother without any special agreement with reference thereto. Some land near their home was rented, and when they were not working in the mine they would work on this land. Appellant testified that there was a joint bank account opened March 31, 1922, in his name, and that every time they had any money at home it was put in that account, including the earnings of three other brothers who worked in the mines and turned their earnings over to the mother. With reference thereto appellant said: "The money I earned might be paid for the groceries and the money some other brother earned might go in the bank account. I did not keep any account as to that. I didn't know what Alex earned or what the other boys earned. We were all living there together and eating at the same table. I did not pay any board. None of us paid any board—just used our money to keep our home and board there. I contributed money to the bank account, and if Alex earned money it went into this bank account in my name, with the understanding if we wanted to borrow money from anyone by it being that way we borrowed money that way, because it was understood between my folks and myself that it was in my name. There wasn't any special books kept by either my father or mother or

Alex or myself. I don't remember how often we paid on the land nor what I paid, but I do know the time I stayed at home we talked about how much we had and how we were getting the money together." The initial payment of $50 on the Blakeney land was made with money furnished by Barbara Kedas and taken from the joint accumulations. Appellant did not know that the Powers land had been purchased until he came back from the navy. He testified that he thought he made one payment on the Powers land after he came back from the navy but did not remember how much. He thought it was cash and something like $200. The agent for the sale of the Powers land testified that the purchase price of the land was $2328; that there was a written contract for the sale of it direct to Barbara Kedas; that he had charge of all collections; that Alex Kedas made all the payments on the contract; that the last payment was made on April 22, 1925, when the deed was made, and that Pete Kedas never made any payment on the land. In December, 1923, Barbara Kedas and her husband deeded their interest in the two tracts to appellee.

What is said in *Brooks* v. *Gretz,* 323 Ill. 161, is so apropos to the facts of this case that we quote therefrom *in extenso:* "It is contended by appellants that by reason of the contribution of their earnings to their father a resulting trust in the properties in question was created in their favor. A resulting trust does not arise from or depend upon any agreement between the parties. As its name implies, it is independent of any contract and is raised by the law upon a particular state of facts. It results from the fact that one man's money has been invested in land, and the conveyance taken in the name of another. It is immaterial whether the purchase was made and the money of the *cestui que trust* paid by the trustee or the *cestui que trust.* If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was used to purchase the land, either to the whole or to his equivalent portion

thereof. (*Bruce* v. *Roney*, 18 Ill. 67; *Baughman* v. *Baughman*, 283 id. 55; *Frewin* v. *Stark*, 319 id. 35.) A resulting trust is created, if at all, at the instant of the taking of the title. (*Lord* v. *Reed*, 254 Ill. 350.) While a resulting trust may be established by parol testimony, the proof must be clear and convincing, and so strong, unequivocal and convincing as to lead but to one conclusion. (*Winkelman* v. *Winkelman*, 307 Ill. 249.) If the explanation of the evidence may be made upon theories other than the existence of the trust such evidence is not sufficient to support a decree declaring and enforcing such trust. (*Rubin* v. *Midlinsky*, 321 Ill. 436; *Reeve* v. *Strawn*, 14 id. 94.) A resulting trust does not arise by reason of payments made which are not coincident with the purchase and the deed. It must arise, if at all, from the circumstances and status of the parties as they existed at the time the title was acquired and the money was appropriated and used in the purchase thereof. Money furnished for the purpose of making payments on lands theretofore acquired under a contract cannot create a resulting trust in favor of the person so loaning the money; neither can a resulting trust arise in real estate by reason of the fact that money is loaned or used for the erection of buildings on the property. (*Furber* v. *Page*, 143 Ill. 622; *Lear* v. *Chouteau*, 23 id. 37; *Pain* v. *Farson*, 179 id. 185.) Where several persons contribute to the purchase of real estate, it is essential, in order to create a resulting trust, that it shall appear that, the sums severally contributed were for some distinct interest or definite part of the estate.—*Reed* v. *Reed*, 135 Ill. 482; *Strong* v. *Messinger*, 148 id. 431; *Katzing* v. *Wiegand*, 286 id. 646." To the same effect is *Stelling* v. *Stelling*, 323 Ill. 122.

There is no evidence in this record showing or tending to show that any definite part of the purchase money of either of the two tracts of land was furnished by appellant. When the evidence in the case is tested by the rules herein

634

laid down, it is evident that appellant has failed to make the proof required by law to entitle him to a decree declaring that appellee held the title to either of these parcels of land in trust for appellant, and that the master to whom the cause was referred to take the proofs and report the findings properly so found.

The court did not err in approving the master's report and entering a decree finding that appellant had no interest in the two tracts of land, and that therefore he was not entitled to partition and an accounting for the rents and profits therefrom. The decree of the circuit court is therefore affirmed.

*Decree affirmed.*