SAMUEL Q. GOLDMAN, GREENFIELD VILLAGES, INC., a Florida corporation, et al., v. GENE G. OLSEN.

31 So. (2nd) 623                                    June Term, 1947
August 1, 1947                                           En Banc
Rehearing withdrawn Sept. 3, 1947

*Smathers, Thompson, Maxwell & Dyer* and *L. S. Bonsteel,* for appellants.

*Parker, Foster & Wigginton* and *Martin D. Von Zamft* and *Morehead, Pallot, Smith, Green & Phillips,* for appellee.

PARKS, Associate Justice::

Gene G. Olsen sues her brother, Samuel Goldman, seeking the decree of the court declaring that she is the equitable owner of an undivided one-half interest in certain lands, the title to which she alleges is vested in defendant, Glenn H. Curtiss Properties, Inc., subject, however, to its sale and purchase contract with defendant, Revah Richardson, her nominee. To establish her claim, she alleges that she and Goldman had a contract in which she agreed to and did furnish a part of the purchase price of the land, for which she was to receive an undivided one-half interest; that Goldman repudiated his agreement, and denies that she furnished any part of the purchase price or has any interest in the land and that, all the purchase price having been paid, he is now about to have the title conveyed by Richardson and Curtiss to himself or his corporation, Greenfield Villages, Inc. She prayed, as a part of her relief, for a temporary injunction against Richardson, Goldman and Greenfield Villages, restraining them from conveying or otherwise disposing of the land. The court, without notice to the defendants, issued a temporary restraining order against them as prayed for. Shortly there-

after, Goldman and Greenfield Villages, Inc., answered the bill and denied that she paid any portion of the purchase price of the land or that there was any agreement between her and Goldman that she should have a one-half interest or any interest whatsoever in it. Along with this answer, they filed a joint motion to dissolve the temporary injunction. There is an intervention and answer by other defendants, which it is unnecessary to further notice, in view of our disposition of the case. · The appeal is from the final decree, declaring plaintiff owner of an undivided half interest in the lands.

Judge Milledge, to whom the case was assigned, issued the temporary restraining order, but, for some reason not appearing in the record, the defendants' motion to dissolve was heard by Judge Carroll. At the conclusion of the second day of the hearing, the Judge announced that the time allotted for the hearing had been consumed and, noting that plaintiff had other witnesses to produce, refused to dissolve the order, observing that "this conflicting evidence alone is enough to show a serious controversy on the facts; which cannot be determined except on a full trial of this case, and the injunction will not be dissolved at this time." A few days later, Judge Milledge entered an order referring the cause to a Special Master to take the testimony of the parties and report it to the court, together with his findings of fact and conclusions of law. The Master proceeded to hear the testimony of the witnesses produced before him, including in part that of some of the witnesses appearing before Judge Carroll and, "having been directed to consider" the testimony taken before Judge Carroll, reported his findings of fact and conclusions of law upon all of the evidence, which report was thereafter ratified and approved in the decree of Judge Milledge in the following language:

"The findings of fact and conclusions of law stated therein are each and every ratified, approved and confirmed."

The Master, in his findings of fact, Paragraph 9, in part said:

"The testimony of the plaintiff, Gene G. Olsen, and her witnesses, is so sharply in conflict with the testimony of the

defendant, Samuel Q. Goldman, and his witnesses, bearing upon the above stated question, that it is impossible to wholly reconcile the testimony. I find that the plaintiff has sustained by a preponderance of the credible evidence her contention that she acquired by agreement with the defendant, Samuel Q. Goldman, a one-half interest in the property and profits arising from the development of the Golf Park Subdivision. . . . From an observation of all of the witnesses who appeared before me and considering their interest in the outcome of the litigation and their motive or lack of motive, as well as their ability to know the facts concerning which they have testified, it is the Master's conclusion and he so finds that the greater weight of the evidence preponderates in favor of the plaintiff's case."

In the finding of fact and conclusions of law and their ratification and approval by the lower court, both the Master and the court adopted and applied the usual rule of the quantum of proof required in civil cases, namely, that the plaintiff must prove her case by a preponderance of the evidence. The object of this suit was to establish a resulting trust in her favor and, in such case, the more burdensome rule prevails, requiring that the quantum of proof must be such that the evidence must be so clear, strong and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust. See Lofton v. Sterrett, 23 Fla. 565, 2 So. 837; Geter v. Simmons, 57 Fla. 423, 49 So. 131; Johnston v. Sherehouse, 61 Fla. 647, 54 So. 892; Burgess v. Wirt, 91 Fla. 425, 108 So. 169; Brown v. Brown, 106 Fla. 423, 143 So. 737, Frank v. Eeles 152 Fla. 869, 13 So. (2nd) 216 and Powell v. Race 151 Fla. 536, 10 So. (2nd) 142 and cases there cited. There is no rule of evidence more strongly imbedded in our jurisprudence.

Plaintiff, to prove her case, offered testimony tending to or proving a joint venture between her and Goldman with respect to the acquisition of the lands, but the case is nonetheless one for the establishment of a resulting trust. In applying the preponderance of evidence rule, the court and Master were in error.

We have carefully considered the record and all of the

evidence in the case and, on this review, we are not satisfied that the quantum of evidence is such that we would be justified in holding decree without error and affirming it under the harmless error rule. In view of the erroneous rule of evidence adopted and applied, we think the case should go back to the lower court to be considered and determined on all points by Judge Milledge, Judge Carroll, or other judge of the lower court.

Under the course which the case took in the lower court, Judge Carroll, having personally heard a substantial portion of the testimony given at the initial hearing and having withdrawn from the case, the Special Master not having had an opportunity to hear the testimony so taken, but having considered it in making up his findings, and Judge Milledge, having heard none of the testimony, decided the case on final hearing, we do not say that a different result would have been reached had Judge Carroll followed the case through to final decree. The practice of the Circuit Court in the disposition of the case is not censured, and it is entirely within the province of that court to establish its own practice in such matters. Doubtless there were good reasons for the course taken by the case. We cannot refrain, however, from expressing the thought that sound practice suggests that where practicable the Chancellor who hears a substantial portion of the testimony in a case should determine and dispose of it on final hearing.

Reversed.

THOMAS, C. J., TERRELL, BUFORD, ADAMS and BARNS, JJ., concur.

CHAPMAN, J., dissents.

CHAPMAN, J., dissenting:

The transcript in this cause has been studied, the briefs read and cited authorities examined, and, after hearing able oral argument at the bar of this Court by counsel of record, it is my view and conclusion that the appellants have not shown reversible error in the record, and accordingly I think the judgment of the lower court should be affirmed.