Kathryn Lennon Merschat, Administratrix of Estate of Richard W. Merschat, Deceased, and Kathryn Lennon Merschat, Individually, Plaintiff-Appellee and Cross-Appellant, v. Henry A. Merschat, Defendant-Appellant and Cross-Appellee, and Drovers Trust and Savings Bank, as Trustee of Trust Number M 31 et al., Codefendants.

Gen. No. 46,015.

430

Opinion filed March 2, 1954. Rehearing denied March 23, 1954. Released for publication March 23, 1954.

KLEIN & THORPE, of Chicago, for appellant; FRANK-LIN W. KLEIN, and ARTHUR C. THORPE, both of Chicago, of counsel.

MULCAHY, MURPHY & DIERINGER, of Chicago, for appellee; MICHAEL F. MULCAHY, and HENRY W. DIERINGER, both of Chicago, of counsel.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal by Henry A. Merschat, hereinafter called "defendant," from a decree which declared a resulting trust in favor of plaintiff for a one-half beneficial interest in the premises known as 8023 South Vernon avenue, Chicago. Plaintiff filed a cross-appeal, contending that she should have been awarded the full beneficial interest in the building. Certain other minor issues are raised which we will consider later.

Plaintiff, Kathryn Merschat, is the widow of Richard W. Merschat, a brother of defendant. Richard at the time of the acquisition of the property herein, operated a drugstore. His wife, plaintiff, worked in the store, assisted in the management of their property, and took care of their home. Sometime prior to the transaction in question, Richard, Henry and Kathryn together discussed the matter. Negotiations followed and on October 2, 1940 an agreement was made for the purchase of the property for $20,750, of which $500 was recited as having been paid. The deal was closed November 23, 1940 by the transfer of the property to the Drovers Trust & Savings Bank as trustee. The trust agreement, after the usual formal recitals, stated that the "following named persons shall be entitled to the earnings, avails and proceeds of said real estate according to the respective interests herein set forth, to-wit: Henry A. Merschat and Richard Wm. Merschat, as joint tenants and not as tenants in common." It further provided that the interest of any beneficiary thereunder "shall be deemed to be personal property" and that the trustee "shall deal with said real estate on the written direction of either Henry A. Merschat or Rich-

432

ard Wm. Merschat . . . ." The agreement was signed by Henry Merschat and Richard William Merschat. According to the testimony of an officer of the bank, the words "Henry A. Merschat and Richard Wm. Merschat, as joint tenants and not as tenants in common," were not in the agreement at the time it was prepared in the bank. How and where they were inserted does not appear. According to plaintiff's testimony, the document was brought to her husband to sign while he was lying ill in bed. She claims he had no understanding of that clause.

$13,250 of the purchase price was paid when the deal was closed and a mortgage given for the balance of $7,500, payment of which Richard and Henry guaranteed. One year later, in November 1941, Richard sold his drugstore because of illness and from the proceeds paid $5,000 on the mortgage which, together with $2,500 from Henry, paid it off. Henry collected rents from the time the property was purchased until Richard and Kathryn moved into an apartment in the premises in September 1941, after which time Richard collected substantially all the rents. Following Richard's death on June 23, 1948, Kathryn collected rents until January 1949, when she learned of Henry's claim to the entire property, and this suit was filed.

The principal issue of fact concerns the contributions made to the amount of $13,250 paid in when the property was purchased. Kathryn contends that she contributed $8,000 to the purchase, and that the balance of $5,250 came from other members of Henry's family. Henry insists that only $3,000 of the amount was Kathryn's money and that, at most, it was loaned to Richard and Henry for the purchase. The evidence concerning these squarely opposing contentions is not completely free from doubt. Kathryn testified that at the closing of the deal she paid the $3,000 (which Henry admits) by a check drawn on her bank account; that at the same

time she withdrew $2,000 from the Grand Crossing Postal Savings Station which she gave in cash to Henry, thus making a total of $5,000. In this respect she is corroborated by the postal savings record showing the withdrawal. In addition to this amount, Kathryn testified that she had $3,000 in cash in her home, which she also gave Henry. On this latter claim there is no corroborating testimony. Henry's evidence sought to show that aside from the $3,000 check from Kathryn's account, the balance of the money was produced by his mother and him. In support of this he produced his mother Marie, his father Paul, and his sister. They testified unequivocally that Marie and Paul went to the Grand Crossing Postal Savings Station where Marie, the mother, withdrew $2,000 from her savings account and $1,000 from the sister's account. It appears, however, that the mother and sister did not have accounts at the Grand Crossing Postal Station, although they did at the Englewood Station, some miles away, and the records of that station show that a withdrawal was made at the time the deal was closed. Other conflicts and inconsistencies appear in their testimony. In addition, the mother testified that she gave Henry $2,000 in cash which she had in her house. There is no corroborating testimony to that effect by any disinterested witness. It is clear, however, that approximately $5,000 in cash was used to close the deal which, together with Kathryn's check for $3,000 and the earnest money and checks contributed by Henry amounting to over $5,000, made up the $13,250.

The case was heard by a master over a considerable period of time in the desultory fashion which characterizes such proceedings. After the close of plaintiff's case, a motion was made to dismiss the suit. The master on September 13, 1950, for some reason made what appears to be a definitive report, denying the mo-

tion. Objections were made to the report, some of which were sustained and others set aside, and a supplemental report was made on November 15, 1950. The master made another report on August 17, 1951, and then made a supplemental report on December 3, 1951, so that altogether, we have four drafts of reports. The chancellor found that the reports were so confusing and inconsistent with each other that it was necessary for him to study and consider all the testimony and exhibits, to hear arguments at length, and to have briefs presented. He found that Kathryn contributed substantially half the purchase price for the property and that accordingly a resulting trust arose in her favor to that extent. He set aside the joint tenancy, decreed that Kathryn was entitled to a one-half beneficial interest in the trust, and directed the trustee to act only upon the direction of both plaintiff and defendant.

 The principal error relied on by defendant is that the evidence does not support the requirements necessary under the law of Illinois for the establishment of a resulting trust. A resulting trust may be found where one person's money has been invested in land and the conveyance taken in the name of another. "If the fact exists, by mere operation of law a trust is raised in favor of the party whose money was paid to purchase the land, either to the whole or his equivalent portion thereof." *Mercury Club v. Keillen,* 323 Ill. 24, 26 (1926); *Craven v. Craven,* 407 Ill. 252, 260 (1950); *Frewin v. Stark,* 319 Ill. 35 (1925); *John v. John,* 322 Ill. 236 (1926); *Bruce v. Roney,* 18 Ill. 67 (1856). If Kathryn's money was contributed either all or in part to purchase the property, then the joint tenancy between Richard and Henry is a nullity. *Kane v. Johnson,* 397 Ill. 112 (1947). There is no question but that Kathryn contributed money toward the purchase price at the time the property was obtained and that she did so for the purpose of having an interest

435

therein. The record does not show any support of Henry's contention that the funds contributed by Kathryn were joint funds belonging to both Richard and Kathryn. Nor does it support the alternative contention that the money contributed by Kathryn was merely a loan to Richard and Henry.

■ The chancellor, in finding that Kathryn contributed "substantially half" the amount, overruled the master's report, as he properly could. *Zilvitis v. Szczudlo,* 409 Ill. 252, 255 (1951) ; *Jones v. Koepke,* 387 Ill. 97 (1945). Where the chancellor sustains the master's report, the findings of the court cannot thereafter be set aside unless they are against the manifest weight of the evidence. *Schmalzer v. Jamnik,* 407 Ill. 236 (1951) (and cases there cited) ; *City of Quincy v. Kemper,* 304 Ill. 303 (1923). Where, however, the chancellor does not sustain the master, then a reviewing court may take the master's report into account so far as it may appear to be worthy, but no particular measure of weight is ascribed to it. Obviously, what the chancellor did was to accept that portion of plaintiff's case which was clearly proven, to-wit: that initially she contributed $5,000 by check and cash and that thereafter there was contributed for her an additional $5,000 to discharge the mortgage, making a total of $10,000, or approximately half the purchase price, thereby entitling her to a resulting trust for one-half. This was a reasonable conclusion, supported by the evidence.

■ Defendant contends that certain formal requirements necessary to the establishment of a resulting trust are lacking. Before proceeding to a consideration of those particular points, it should be noted that there are facts which differentiate this case from the usual case involving resulting trusts. This was not a joint tenancy in land created by a formal agreement, but an agreement whereby the avails and proceeds of this property, declared to be personal property, were

436

to be held in joint tenancy. This simple provision was inserted without any formality in an instrument signed by defendant and his brother, without the advice of a lawyer. That Henry did not understand the meaning of the joint tenancy clause is evidenced by the testimony of Price, the real estate agent, a disinterested witness. Price stated that Henry came to see him six months or a year after the closing of the transaction and said he wanted to fix the property so that in case he went into service and did not return, the title would not be involved. He told Price he was "holding the property for his brother and his brother's wife." He talked about drawing deeds and not recording them, and Price testified he told Henry he did not know how to handle property in that manner and suggested that Henry see an attorney or someone more familiar with those matters than himself. This, together with the family relationship of the parties, reveals the informal character of their arrangement with respect to this property. It was proper for a court of equity to take that into account in determining whether the formal requirements for a resulting trust were present. A study of the principal cases on which defendant relies will reveal that the substantial prerequisites for such a trust were here present.

■ Defendant contends that in order to establish a resulting trust, the precise amount contributed must be proven. In *Kedas v. Kedas,* 342 Ill. 630 (1931) cited by defendant, a son sought to establish a resulting trust on two pieces of real estate taken in the name of his mother. His contention was that the family lived together and earned money which they put in a bank account, and that this was the source of payment for the property. The court said, at p. 633:

" 'Where several persons contribute to the purchase of real estate, it is essential, in order to create a resulting trust, that it shall appear that the sums severally

contributed were for some distinct interest or some definite part of the estate. *Reed v. Reed,* 135 Ill. 482; *Strong v. Messinger,* 148 id. 431; *Katzing v. Wiegand,* 286 id. 646.' To the same effect is *Stelling v. Stelling,* 323 Ill. 122."

The point stressed by the court in that case is that the contribution should have been made for a specific purpose, that is, for a specific interest in a specific piece of land, and it is this fact which a court must find, rather than the precise amount of the contribution.

In *Orear v. Farmers State Bank & Trust Co.,* 286 Ill. 454 (1919), also cited by defendant, the situation was similar to the *Kedas* case in that plaintiff contended that she and the decedent were supposed to be partners, and that all the money he invested in real estate was partnership money. Accordingly, she sought to impress a resulting trust on a certain parcel of real estate after his death. The court rejected plaintiff's claim on the ground that she had not established an interest in the particular land in question, saying, p. 468:

"[Plaintiff's witnesses] did not claim that they knew what special pieces of land [decedent] was referring to or how many pieces, and while they were not at all certain as to the dates of most of these declarations, it is apparent that the majority of them, at least, must have been made years before Rees purchased the land in . . . question. . . . Even conceding that Rees stated [that they were to be partners in lands], what lands did he mean?"

*Kinsch v. Kinsch,* 348 Ill. 446 (1932) and *Brooks v. Gretz,* 323 Ill. 161 (1926), which are relied on by defendant, also involve childrens' contributions to common funds over a period of years, which funds they allege were used by the parents to purchase the disputed properties. In rejecting the claims the court in both of those cases stressed the lack of proof as to the

relationship between the contribution and the property in question. Here, there is no question that Kathryn's money was directly contributed to the purchase of the property in question. Accordingly, the cases cited by defendant are not applicable to the instant case.

■ ■ It is conceded that one year after the purchase of the property, Richard sold his drugstore and from the proceeds paid $5,000 upon the mortgage debt, which brought the total amount contributed by Richard and Kathryn to $10,000, or about the same as Henry's contribution. Defendant contends that this cannot be considered because an essential requirement of a resulting trust is that only payments made at the time of the original transaction can be taken into account, citing Pomeroy's Equity Jur., 5th Ed., Vol. IV, sec. 1037, p. 72, and cases. Defendant admits that there is an exception to this rule in a case where a plaintiff pays off a mortgage and note which he signed or for which he assumed liability at the time of the original purchase. We accept as definitely established on the part of plaintiff that her check for $3,000 plus the $2,000, which it was shown she had withdrawn from her postal savings account that day, or $5,000, was paid by her for an interest in the property. Thereafter, when the mortgage was paid, a further contribution of $5,000 was made for her, making a total of $10,000. Taking into account that Henry had received $250 rebate on the commission, which appears from the real estate agent's testimony, this is practically a full accounting by Kathryn of payment of one-half the purchase price. The unequal payment on the mortgage must have been pursuant to a prior understanding entered into at the time the deal was made that she was to provide substantially half the total purchase price. Any other conclusion does not make sense. It is argued by defendant that the contribution of $5,000 to discharge the mortgage was made by Richard, and not by his wife Kath-

439

ryn. In view of the relationship between Richard and his wife, her association with him in business and in the management of their property, her participation in the original conference with respect to the purchase of this property, and her contribution of her own funds, it appears clear that the contribution of $5,000 made by Richard, even though not shown to be out of a common fund with Kathryn, was nevertheless a contribution toward her interest in the property. This is certainly much more reasonable than that it was intended for Henry's benefit. The cases cited by defendant on this point are different factually from the case at bar and have no value as precedent on what is essentially an issue of fact.

▮▮ Admonitions of courts with respect to proof required in cases involving resulting trusts stem from the time real estate constituted not only the great body of wealth in the community, but fixed both social and political status. A conveyance of real estate or any instrument creating an interest therein constituted a ceremonial of great dignity and importance. In our time, however, formal land titles are no longer held in such high sanctity by courts, laymen, or lawyers. Such titles are frequently put in the names of nominees or "strawmen," or a title may be in the name of one when, as a matter of fact, he has an interest along with many. *In re: Childs Co.,* 163 F.2d 379, 382; *Shiel v. Chicago Title & Trust Co.,* 262 Ill. App. 410, 416. This is the realistic conception which we must take of real estate transactions today. Any other view can often lead to great injustice. This does not mean that this court departs from accepted rules of long standing with respect to proof required in cases of resulting trusts. What we have said relates rather to the weight of evidence such as was here presented on behalf of Kathryn. Considered in this light, the evidence offered on her behalf with respect to her interest in the property is

reasonable. We affirm the conclusion of the chancellor that Kathryn is entitled to a one-half interest in the property and that there is a resulting trust in her favor to that extent.

The chancellor made no findings as to one of the alternative contentions of plaintiff—that Henry stood in a confidential relationship to Kathryn and accordingly could not stand on the legal technicalities of the joint tenancy clause. In our view of the case, it is unimportant to decide that question, although it would appear from the evidence that elements of such a relationship were present.

■ Plaintiff complains of that part of the decree which divided the costs of the proceeding equally between the parties. That matter is within the discretion of the chancellor and there is no indication that he abused his discretion.

■ There remains for our consideration that portion of the decree which rereferred the cause to the master to determine whether there should be an accounting on the part of plaintiff for income received from the premises and, if so, to take such an accounting. The record shows that large costs have already been incurred in connection with this litigation. In our opinion the chancellor should first determine whether an accounting should be made and, if possible, should avoid any further reference. Accordingly, that portion of the decree relating to an accounting is reversed and the cause remanded to the chancellor with directions to take further proceedings not inconsistent with the view herein expressed. In all other respects, the decree of the chancellor is affirmed. Costs of the appeal are hereby taxed to the defendant Henry Merschat.

*Affirmed in part and reversed in part.*

TUOHY and ROBSON, JJ., concur.