396 So.2d 744 (1981)
Arthur L. HIESTAND and Elaine D. Hiestand, Appellants,
v.
Martha GEIER, Appellee.
Nos. 79-1048, 79-1301.
District Court of Appeal of Florida, Third District.
March 24, 1981.
Rehearing Denied April 28, 1981.
*745 Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik and Paul Siegel, Miami, for appellants.
David D. Phillips, Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for appellee.
Before SCHWARTZ, NESBITT and BASKIN, JJ.
BASKIN, Judge.
Martha Geier brought an action against Arthur Hiestand and Elaine Hiestand seeking imposition of a resulting trust on a note and mortgage which secured the balance of the purchase price in the sale of Sun State Oil Company to Harry Joseph Barkett. At issue was her agreement to purchase from the Hiestands half of Sun Oil's property and stock for $57,000. She contended that she owned half of Sun State Oil Company and was therefore entitled to receive half the proceeds upon its sale. The trial court rejected the Hiestands' response that Mrs. Geier had not paid $57,000, but instead had loaned Mr. Hiestand or the company $42,074.88 and had been fully reimbursed. The trial court ruled that Mrs. Geier had, by clear and convincing evidence, established her entitlement to a resulting trust in half the sale proceeds and later awarded her attorneys' fees.[1] Whether "clear and convincing evidence" constitutes the appropriate burden of proof to establish a resulting trust is the issue we now consider. We hold that "clear and convincing evidence" is the correct burden of proof. Since we also hold that the final judgment is supported by clear and convincing evidence, we affirm; however, we reverse the award of attorneys' fees as they are not authorized either by contract or statute.
In an attempt to raise money to cover debts owed to Internal Revenue Service incurred by Sun State Oil Company, the business founded by Arthur and Elaine Hiestand, Arthur Hiestand decided to sell company owned assets or property. In consideration of Martha Geier paying IRS $16,052 covering Hiestand's obligation to IRS, deeds were executed from Arthur and Elaine Hiestand and Sun State Oil Company to Arthur Hiestand and Martha Geier. The deeds were never recorded. A letter evidenced Mrs. Geier's agreement to pay $57,000.
 3 October 1967
 Mr. A.L. Hiestand
 1099 N.E. 89th Street
 Miami, Florida
 Re: Sale of Real Property and Stock to
 Mrs. Geier

*746 Dear Art,
In accordance with your request, I have reviewed your proposed sale to Mrs. Geier and would like to make the following recommendations.
1) The Selling Price of the land held personally by you and Elaine should be sold for $31,500.00. This represents approximately one-half of the appraised valuation of the property by Harry Piepgras. The terms would be all cash subject to Mrs. Geier assuming one-half of the existing mortgage on the property or approximately $27,300.00 to you... .
2) The selling price of a 50% interest in the stock of Sun State Oil Co. Inc., would be $25,500.00 ..."
The company, which had dissolved, was incorporated as a new company under the same name. Arthur Hiestand owned fifty percent, Martha Geier forty-eight percent, and her nephew two percent.
Although books were kept reciting monies paid by Martha Geier over a period of time, a factual dispute arose as to the amount she actually paid. At trial, Martha Geier testified that she had paid "in the neighborhood of around sixty-three thousand and some odd dollars." A list of deposits she made was introduced in evidence. Arthur Hiestand admitted she had paid, either to the company or the corporation, $42,074.88.
Arthur Hiestand contended the payments from Martha Geier were loans and that she failed to pay the full purchase price of $57,000. In support of his contention, he testified that he had paid capital gains taxes on the entire sale proceeds and argued that since checks he wrote to her after the sale were marked loans, the evidence was insufficient to support her argument. When Sun State Oil Company was sold to Harry Barkett for $175,000, the proceeds of the sale were divided until Martha Geier received slightly more than she had advanced. Mrs. Geier argued that Arthur Hiestand had told her she would receive the proceeds of the sale to Harry Barkett when she gave him abstracts on the property and the corporate seal. Arthur Hiestand, on the other hand, claimed that he told Mrs. Geier he would divide the proceeds of the sale pending settlement of the issue until the funds she advanced had been recovered. According to Martha Geier, a resulting trust arose by virtue of the agreement between Geier and Hiestand to sell to Barkett upon the subsequent closing of the transaction and taking back of the mortgage. After considering the testimony and arguments presented by the parties, the trial court ruled:
The purchase price agreed between the parties was reasonably related to the book value of the corporation and the appraiser's report. All papers effectuating the transfer of the real and personal property were executed pursuant to the intent of the parties in September of 1967. It is uncontroverted that substantial payments were made by the Plaintiff on behalf of the defendant, as evidenced by the ledger sheet marked into evidence as Plaintiff's Exhibit 9.
The Defendant, Arthur Hiestand, testified under oath that his understanding of the escrow letter was to `get rest of $57,000.00 before that was all wound up.'
Time for performance was not specified in the escrow letter or executed documents. The Defendants' contention that $57,000.00 in [cash][2] was to be paid to him, is unrealistic, and strains the imagination of this Court to put such an interpretation on the intent of the parties to this transaction.
The Court, having weighed the testimony and believability of the witnesses and parties, that the payments by the Plaintiff, made to the Defendant, or on his behalf, or for the benefit of the corporation, were in excess of the agreed upon purchase price; that said consideration was made timely and within the terms and conditions of the agreement and intent of the parties. The Court further finds that the actions of the Defendant, subsequent to September, 1967, reaffirmed *747 his intent to sell one-half of the property to the Plaintiff. The notations on the checks paid to Mr. Geier [sic] are self-serving and have no legal effect.
The parties did not ask for an accounting, and the allegations of the Defendants that the Plaintiff did not have sufficient funds to pay the monies for the purchase price, and further that the Plaintiff received back all monies advanced. The Court will not go into the matter of the monies each of the parties deposited or withdrew from the corporation; nevertheless, the Court does find that the Plaintiff's testimony, and the exhibits in evidence, support the allegations of the Plaintiff by the greater weight of the evidence.

The Court has not ignored the testimony of the accountants or the income tax returns in evidence, as substantiating Defendants' contentions; however, the review of the journal, returns, checks, loan applications and other financial matters regarding the corporation, do not substantiate the parties intent or method of operation as outlined by the returns.
The Court finds as a matter of law and fact that the Plaintiff has established, by clear and convincing evidence, that the Plaintiff is entitled to a resulting trust in the proceeds from the sale of property (both real and personal) to Harry Barkett from the Defendants; the Plaintiff, Martha Geier, owning one-half of said property, by operation of law, on or about September, 1967.
WHEREFORE, it is Ordered and Adjudged as follows:
1. The Plaintiff, Martha Geier is one-half owner of the note and mortgage (Plaintiff's Exhibits 29 & 30) wherein Harry Barkett is the mortgagor-[payor][[2]] and Arthur L. Hiestand and Elaine D. Hiestand, his wife, are the mortgagees-[payees],[[2]] dated August 31, 1970, recorded in Official Records Book 6962 at Page 741, Dade County, Florida.
2. The assessment of costs and attorney's fees are reserved for subsequent hearing.
3. The trustees appointed by Order of Court dated February 22, 1977 shall file an accounting of monies held and/or disbursed by them within 15 days of this judgment. (emphasis supplied).
Our resolution of this appeal has required us to review existing law relating to the method of proving a certain type of trust, a resulting trust. Trusts may be express or implied. Whereas express trusts state the intent of the parties, implied trusts lack the expression of the parties' intentions. They must be proved to exist as resulting trusts or constructive trusts from the evidence presented to the court. In the case under review, the object of our attention is a pro-rata purchase-money resulting trust. See Merschat v. Merschat, 1 Ill. App.2d 429, 117 N.E.2d 868 (1954); Restatement (Second) of Trusts § 454 (1959).
The requisite burden of proof necessary to establish a resulting trust has been considered on many occasions. Because the intent of the parties must be established from parol evidence, courts have demanded more than a mere preponderance of the evidence. Collected in 89 C.J.S. Trusts § 137 (1955) are no fewer than sixty-two different descriptions of the degree of proof required. They range from "certain, definite and reliable", Gorrell v. Gorrell, 2 N.J. Misc. 871, 127 A. 346 (1925), to "strong, unequivocal, and convincing", Kedas v. Kedas, 342 Ill. 630, 174 N.E. 894 (1931). While some courts have required the removal of all reasonable doubt, other courts have repudiated the use of a criminal burden in a civil suit. Crain v. Keenan, 218 Ark. 375, 236 S.W.2d 731 (1951) (evidence must be "clear and convincing"); Kull v. Pearl, 147 Kan. 329, 76 P.2d 790 (1938) (rejected the "so as not to leave reasonable doubt" standard in favor of "clear and convincing"); McFarland v. LaForce, 119 Mo. 585, 27 S.W. 1100 (1894) (Barclay, J. concurring) (rejecting *748 the "beyond reasonable doubt" standard in favor of "clear and convincing"); Sisemore v. Pelton, 17 Or. 546, 21 P. 667 (1889) (rejecting "beyond a doubt" standard in favor of "clear and cogent"). Many of these jurisdictions follow the "clear and convincing" standard. Whether courts really intended to require proof beyond a reasonable doubt is uncertain. Bogert, Trusts & Trustees § 464, at 775 (2d ed. rev. 1977); 1 U.Fla.L.Rev. 97, 98 (1948). It is apparent, however, that courts demand more than a mere preponderance of the evidence. Bogert suggests that the reasons are predicated upon a "high regard for the sanctity of land titles" and the ease with which frauds on creditors can be worked.
Although some Florida courts have required evidence to be "clear, strong and unequivocal ...", Grapes v. Mitchell, 159 So.2d 465 (Fla. 1963); Goldman v. Olsen, 159 Fla. 435, 31 So.2d 623 (1947); Geter v. Simmons, 57 Fla. 423, 49 So. 131 (1909); Harnish v. Peale, 386 So.2d 8 (Fla.5th DCA 1980); Jones v. Jones, 140 So.2d 318 (Fla.3d DCA 1962); Estey v. Vizor, 113 So.2d 576 (Fla.3d DCA 1959), the "clear and convincing evidence" standard is also found. Peacock v. Firman, 177 So.2d 560 (Fla.3d DCA), cert. denied, 183 So.2d 215 (Fla. 1965). "Clear and convincing" is also the standard of evidence required to prove constructive trusts. Brown v. Vining, 334 So.2d 647 (Fla.3d DCA 1976); Carberry v. Foley, 213 So.2d 635 (Fla.3d DCA 1968), cert. denied 222 So.2d 750 (Fla. 1969). The standard that "evidence must be so clear, strong, and unequivocal as to remove from the mind of the Chancellor every reasonable doubt as to the existence of the trust", Goldman v. Olsen, supra at 624, is countermanded by the holding of King v. King, 111 So.2d 33 (Fla. 1959) that evidence of an implied trust must be of "clear and convincing character."
Upon consideration of the foregoing authorities, we conclude that the purpose of requiring more than a preponderance of the evidence is to compel a degree of certainty when the parties' conduct is the only evidence of their intent.
It appears dubious whether the courts really mean to require proof beyond a reasonable doubt. They do, however, in all probability exact somewhat stronger and clearer proof than in the ordinary equity case. .. . Thus Judge Pound, in Doane v. Dunham [1902, 89 N.W. 640, 64 Neb. 135, 136], after showing that the complainant has the burden of proving the payment of the price, an intent to have a trust for himself, and also of rebutting a possible inference of a gift arising from a close relationship to the grantee, said: `What would be sufficient to constitute a preponderance of the evidence and to sustain a judgment in an ordinary case might not suffice in another, where, in addition to the burden resting upon the plaintiff in any case, particular presumptions are to be overcome.' And, in referring to the `clear and convincing' rule, a Vermont court has said [Williams v. Wager, 1892, 24 A. 765, 64 Vt. 326, 331]: `Nothing more can be meant by the rule than this, that the trier of the case, whether it is the court or one of its masters, must be reasonably satisfied of the fact which the evidence tends to prove.' And a Pennsylvania court [Epstein v. Ratkosky, 1925, 129 A. 53, 283 Pa. 168, 172], agreeing with an Illinois court [Hartley v. Hartley, 1917, 117 N.E. 69, 279 Ill. 593], concluded that `what that intention was may be proved by the same quantum or degree of evidence required to establish any other fact upon which a judicial tribunal is authorized to act.' (footnotes inserted).
Bogert, Trusts & Trustees, supra § 464 at 775-76.
For these reasons, we hold that clear and convincing, the burden of proof enunciated in King v. King, supra, is the standard applicable to establish a resulting trust.
Was the resulting trust established by clear and convincing evidence? We agree with the trial court that it was. Mr. and Mrs. Hiestand conveyed the property to Mr. Hiestand and to Martha Geier, who had agreed to pay half the purchase price. Although the title remained with Arthur Hiestand, *749 it should have included Martha Geier. The evidence established a resulting trust in her behalf with regard to half the value of the note and mortgage resulting from the sale to Barkett by virtue of her beneficial interest.
Although in the final judgment the court at one point stated that the testimony and exhibits presented on behalf of Martha Geier supported her allegations by the greater weight of the evidence, the court went on to find as a matter of law and fact that she had established by clear and convincing evidence her entitlement to a resulting trust. The judgment, therefore, was clearly predicated upon a correct statement of the law. We agree with the trial court that the evidence supported the imposition of a resulting trust.
The trier of facts has the right to accept testimony and reject other testimony. Grapes v. Mitchell, supra. This court will not re-try questions of fact. Goldfarb v. Robertson, 82 So.2d 504 (Fla. 1955); Hancock v. Piper, 219 So.2d 746 (Fla.2d DCA 1969).
Next, we consider the attorneys' fees awarded by the trial court. Unless a contract or statute provides for attorneys' fees, a court may not award them. Campbell v. Maze, 339 So.2d 202 (Fla. 1976); Rivera v. Deauville Hotel, Employers Service Corp., 277 So.2d 265 (Fla. 1973); Fountainbleau Hotel Corp. v. Postol, 142 So.2d 299 (Fla.3d DCA 1962). Since no contract or statute provided for attorneys' fees to be awarded to Martha Geier, and since this action does not fall within exceptions permitting attorneys' fees in situations in which a joint venturer may recover in an action for accounting or business dissolution, A.J. Richey Corp. v. Garvey, 132 Fla. 602, 182 So. 216 (Fla. 1938); Tobin v. Lefkowitz, 367 So.2d 682 (Fla.3d DCA 1979); Cooper v. Fulton, 158 So.2d 759 (Fla.3d DCA 1963), we reverse the award.
Affirmed in part, reversed in part.
NOTES
[1] The appeals from both orders have been consolidated.
[2] As corrected by Order Correcting Final Judgment.