ON MOTION FOR CLARIFICATION

WALLIS, J.
In consideration of the parties’ motions for clarification, we withdraw our prior opinion and substitute this opinion in its stead.
Appellants, Joann Harrell (“Harrell”) and Barbara Dake (“Dake”), appeal from a final judgment discharging Appellee, Charles Badger (“Badger”), as trustee of the Trust created by Appellants’ mother, Rita Wilson (“Rita”), and from an order awarding attorneys’ fees to Badger. We reverse the final judgment as a result of Badger’s failure to comply with section 736.04117, Florida Statutes (2008), and, noting Badger’s numerous breaches of his fiduciary duty to the Trust, remand for an evidentiary hearing. Additionally, we find that the award of attorneys’ fees to Badger was an abuse of discretion and was against the equities of the underlying case. Accordingly, we reverse the award of attorneys’ fees.
In her will, Rita devised the remainder of her estate to the Trust for the specified purpose of benefitting Appellants’ adopted brother, David Wilson (“Wilson”),[1] as follows:
A. My Trustees shall pay over and distribute, free from any trust, the entire net income of the trust on a monthly basis for the benefit of my son, DAVID A. WILSON.
B. My Trustees shall have the full power and authority, exercisable in their sole and uncontrolled discretion, to pay to or for the benefit of my said son, for his support, maintenance and education or to meet emergencies such as illness, such amount or amounts of the principal of the Trust as my Trustees shall determine to be proper and necessary, and any such payment shall be free from trust and the judgment of my Trustees as to the propriety and amount of any such payment shall be conclusive and binding upon all persons.
The will provided that if Wilson predeceased Appellants, the remaining Trust principal would be distributed to them. The will appointed Rita’s sisters as co-trustees; however, they resigned after Rita’s death, and Wilson consented to Harrell’s substitution as trustee. Following alleged disputes with Appellants, Wilson petitioned the trial court to remove Harrell and to appoint Wilson’s neighbor, Badger, as trustee. Harrell thereafter voluntarily resigned as trustee.
On August 16, 2006, the trial court entered an order appointing Badger as trustee. The order required Badger to obtain a $300,000 trustee bond and to file semiannual accountings. Badger failed to obtain the bond until September 12, 2007, and filed only one accounting in August 2007. Before obtaining the bond, Badger allegedly incurred $34,021 in personal expenses for Wilson’s support. On February 16, 2007, Badger filed a motion seeking reimbursement of the personal expenses *767 and approval from the trial court to employ his wife as the realtor for the sale of Rita’s house — the sole remaining asset of the Trust. Despite holding a hearing on the motion, the trial court never entered an order approving Badger’s requests.
Prior to posting bond, Badger approached Ross and Linda Littlefield (collectively “the Littlefields”) with the intention of transferring the Trust’s assets into a “special needs” trust designed to qualify Wilson for various government benefits. Badger retained Linda Littlefield as counsel for the Trust.[2] In October 2007, Wilson signed a “joinder agreement” to create a sub-account of the Florida Foundation for Special Needs Trust (“FFSNT”), a “pooled trust” administered by the Little-fields. The joinder agreement designated Ross Littlefield as trustee and Wilson as the beneficiary of the sub-account. The agreement provided for the dissolution of the sub-account after Wilson’s death, stating that any funds remaining in the sub-account would be subsumed into the FFSNT and used to provide for other beneficiaries of the pooled trust. The join-der agreement did not list Appellants as remainder beneficiaries or otherwise consider their interest in the original Trust.
Badger, his wife, and Wilson entered into an October 2007 “care agreement.” The care agreement confused the contracting parties, to wit: requiring Badger’s wife[3] to care for Badger, not Wilson, and designating Wilson as a trustee without referencing any trust. Badger testified before the lower court that he did not read the terms of either the joinder or care agreement, and that he was unaware of any requirements to care for Wilson on the part of himself or his wife, despite later submitting “accountings” in which Badger purportedly received thousands of dollars from the various trusts for caregiving expenses.
In January 2008, Badger sold the house — employing his wife as realtor, without court-approval, for a five-percent sale commission — and immediately wired the net proceeds to the FFSNT. Badger did not provide notice to Appellants of the agreements, the sale of the house, or the transfer of all remaining Trust assets to the FFSNT.
The Littlefields subsequently transferred all funds from the FFSNT into another trust — the JNN Trust — apparently without consent from Wilson, Badger, or any other person associated with Wilson’s sub-account. In 2010, the Littlefields were arrested, convicted, and sentenced to prison for the misappropriation of funds in the JNN Trust.
Trial, final judgment, and attorneys’ fees.
On September 21, 2011, Badger filed a motion to terminate the Trust, wherein he first notified Appellants of the agreements, the sale of the house, and the transfer of all funds into the FFSNT. He also filed a series of uncorroborated accountings, ostensibly listing all income and disbursements from the original Trust over the period of December 2007 through November 2012, including payments to and from the FFSNT and the JNN Trust. Appellants filed a counterpetition seeking damages for, among other alleged breaches, Badger’s: (a) failure to obtain court approval prior to employing his wife as the realtor for the Trust; (b) failure to notify Appellants of the sale of the house or the decantation of the Trust’s assets into the *768 FFSNT; and (c) cancellation of Appellants’ remainder interest in the Trust.
At trial on the parties’ petitions, Badger admitted that Appellants “should have been notified” prior to decantation of Trust assets into the FFSNT. Badger’s primary defense against Appellants’ counterpetition was that the provisions of section 736.0816(20), Florida Statutes (2008)— which allows a trustee to rely on the advice of attorneys, accountants, and other experts — absolved him of any liability to the Trust or its remainder beneficiaries. Badger also requested retroactive approval for the employment of his wife as the realtor for the first time during trial.
In the final judgment, the trial court concluded that the terms of Rita’s will allowed Badger to invade the principal of the Trust “to any extent that [he] felt was in the best interests of [Wilson].” The court also ruled that Badger reasonably relied on the advice of his attorneys and the Littlefields and, therefore, did not breach any fiduciary duty to the Trust. In addressing the counterclaims, the trial court found that Appellants presented “absolutely no evidence” in support of their claims, and concluded that Appellants suffered no damages because the original Trust “would have been exhausted at some point in time.” Accordingly, the trial court terminated the Trust, retroactively approved the employment of Badger’s wife, and dismissed Appellants’ claims for damages. The court subsequently entered an order under section 736.1004(2), Florida Statutes (2008), awarding $85,005.50 in attorneys’ fees to Badger, based on the finding that Appellants “presented absolutely no evidence” in support of their claims.
The decantation was invalid as a result of Badger’s failure to comply with section 736.04117, Florida Statutes (2008).
When reviewing trial court actions in a case against a trustee for breach of fiduciary duty, we “will not re-try questions of fact.” Hiestand v. Geier, 396 So.2d 744, 749 (Fla. 3d DCA 1981). In such actions against a trustee, we review the trial court’s conclusions of law de novo and “its findings of fact (including any findings its ruling necessarily implies) to determine whether they are supported by competent, substantial evidence.” Ortmann v. Bell, 100 So.3d 38, 43 (Fla. 2d DCA 2011). Section 736.04117, Florida Statutes (2008), provides, in relevant part:
(l)(a) Unless the trust instrument expressly provides otherwise, a trustee who has absolute power under the terms of a trust to invade the principal of the trust, referred to in this section as the “first trust,” to make distributions to or for the benefit of one or more persons may instead exercise the power by appointing all or part of the principal of the trust subject to the power in favor of a trustee of another trust, referred to in this section as the “second trust,” for the current benefit of one or more of such persons under the same trust instrument or under a different trust instrument; provided:
1. The beneficiaries of the second trust may include only beneficiaries of the first trust;
[[Image here]]
(4) The trustee shall notify all qualified beneficiaries of the first trust, in writing, at least 60 days prior to the effective date of the trustee’s exercise of the trustee’s power to invade principal pursuant to subsection (1), of the manner in which the trustee intends to exercise the power. A copy of the proposed instrument exercising the power shall satisfy the trustee’s notice obligation under this subsection. If all qualified beneficiaries waive the notice period by signed written instrument delivered to the trustee, the trustee’s power to invade principal shall be exercisable immediately. The trustee’s notice under *769 this subsection shall not limit the right of any beneficiary to object to the exercise of the trustee’s power to invade principal except as provided in other applicable provisions of this code,
(emphasis added). The instant application of section 736.04117, enacted in 2007, is a case of first impression. See Ch.2007-153, § 2, Laws of Fla. “Where language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resort to the rules of statutory construction or interpretation. The statute must be given its plain and obvious meaning.” Bewick v. State, 501 So.2d 72, 73 (Fla. 5th DCA 1987) (citing State v. Stuler, 122 So.2d 1 (Fla.1960)).
Here, section 736.04117(4) plainly and unambiguously requires a trustee to provide notice to “all qualified beneficiaries” of his intent to invade the principal of a trust at least 60 days prior to the invasion. Appellants are qualified beneficiaries, as defined in section 736.0103(16), Florida Statutes (2008), of the Trust because of their interest in the distribution of any principal remaining after Wilson’s death. Badger improperly exercised his power to invade the principal of the Trust by failing to provide any notice to Appellants prior to transferring the entire contents of the Trust to the FFSNT.
Additionally, under section 736.04117(l)(a)l., the decantation of trust principal is limited to situations where the beneficiaries of the second trust “include only beneficiaries of the first trust.” Here, the first trust defined Wilson as the primary beneficiary and Appellants as the contingent remainder beneficiaries. The second trust — the FFSNT sub-account— also defined Wilson as the primary beneficiary but provided a contingent remainder interest to beneficiaries of the other FFSNT sub-accounts. The second trust clearly included beneficiaries not contemplated by the original Trust, rendering Badger’s decantation of all assets from the original Trust invalid.[4]
Accordingly, we reverse and remand for the trial court to conduct an evidentiary hearing to determine the value of the Trust at the time of the decanting, reduced by the money disbursed for Wilson’s actual benefit, and enter an order requiring the return of the net value to the Trust. Additionally, we reverse the trial court’s retroactive approval of Badger’s employment of his wife and remand for entry of an order requiring the return of Trust funds paid in commission to Badger’s wife. See Shriner v. Dyer, 462 So.2d 1122, 1124 (Fla. 4th DCA 1984). Despite Badger’s awareness that the employment of his wife created a conflict of interest, he proceeded to pay her commission from Trust funds without prior approval from the lower court. To the extent that any assets are restored to the Trust, we order Badger removed as its trustee.[5]
*770 The trial court abused its discretion by imposing attorneys’ fees against Appellants.
We review a trial court order on a motion for attorneys’ fees in an action challenging the exercise of a trustee’s power for an abuse of discretion. Nalls v. Millender, 721 So.2d 426, 427-28 (Fla. 4th DCA 1998). Section 736.1004, Florida Statutes (2008), requires a trial court to award attorneys’ fees and other costs “as in chancery actions.” Under the chancery rule, a trial court may “apportion the costs between the parties, or require all costs be paid by the prevailing party.” Nalls, 721 So.2d at 427 (quoting Estate of Brock, 695 So.2d 714, 716 (Fla. 1st DCA 1996)). Although we find that the equities of the instant case do not favor any award in favor of Badger, the trial court did not specifically base its award on equitable considerations. See generally Tesla Elec., Armature & Mach, Inc. v. JLM Advanced Technical Servs., Inc., 128 So.3d 865, 866 (Fla. 1st DCA 2013). Rather, the trial court based its imposition of attorneys’ fees against Appellants on the finding that they “presented absolutely no evidence” in support of their claims. Because our ruling necessarily invalidates the trial court’s finding as to the sufficiency of Appellants’ evidence, the award of attorneys’ fees in favor of Badger was an abuse of discretion. We remand for a reasonable apportionment of the parties’ attorneys’ fees. See Republic Nat’l Bank v. Araujo, 697 So.2d 164, 166-67 (Fla. 3d DCA 1997).
REVERSED and REMANDED with INSTRUCTIONS.
ORFINGER and LAMBERT, JJ., concur.

. Wilson is the biological son and biological nephew of Appellants Dake and Harrell, respectively. Rita legally adopted Wilson from Dake, and the parties refer to Appellants as Wilson’s sisters.

. Linda Littlefield was disbarred prior to this appeal. The Fla. Bar v. Littlefield, 41 So.3d 219 (Fla.2010).

. The care agreement provided for compensation of $25 per hour to Badger's wife for most caregiving services and a rate of $50 per hour for several specified services.

. Because Badger’s inclusion of the other FFSNT sub-accounts as remainder beneficiaries clearly ' violated section 736.04117(l)(a)(l), we need not address whether that statute requires the inclusion of all beneficiaries of a first trust as beneficiaries of a successor trust.

. On appeal, Badger asserts that his reliance on advice from prior attorneys and the Little-fields constituted a blanket defense against liability for his numerous breaches of fiduciary duty. Badger argues that the delegation, under section 736.0816(20), Florida Statutes, of his duties to the Trust operated as a shield against Appellants’ claims. We disagree. Badger’s argument is based almost entirely on an unpersuasive interpretation of Wohl v. Lewy, 505 So.2d 525 (Fla. 3d DCA 1987), wherein the Third District Court applied section 733.612(21), Florida Statutes (1985). In Wohl, the court found that an estate’s personal representative acted reasonably by hiring an accountant to prepare the taxes of an estate. 505 So.2d at 525. The accountant’s advice led to a dispute with the IRS and ultimately resulted in a substantial loss to the *770 estate. Id. The Third District Court noted that the accountant's conduct might rise to the level of malpractice but that the accountant's faulty judgment did not serve to make the personal representative liable for the estate's loss. Id. at 526. In contrast, Badger's misconduct in the present case resulted from his failure to comply with clear and unambiguous statutory requirements, not from the faulty investment and decantation advice supplied by his attorneys.